50 So.2d 203

STANDARD OIL CO. OF NEW JERSEY v. EVANS et al.

No. 39305.

Dec. 11 1950.

Tucker, Bronson & Martin, Shreveport, Coenen & Coenen, Rayville, for defendants-appellants.

Breazeale, Sachse & Wilson, Baton Rouge, for defendant-appellee.

HAWTHORNE, Justice.

The Standard Oil Company of New Jersey, acting pursuant to the authority of Act No. 123 of 1922, as amended, has deposited in the registry of the court the proceeds from 1/2 of a 1/8 royalty from an oil well located on the SW 1/4 of the SW 1/4 of Section 26, Township 17 North, Range 8 East, Richland Parish, Louisiana, and has cited the claimants thereto to appear and assert their respective rights, as well as their rights to all sums which might accrue in the future. The claimants to the entire fund are, on the one part, The Mengel Company, a corporation, and, on the other part, George W. Evans and Reagan J. Caraway. There is no controversy between Evans and Caraway, as it is conceded that

Caraway's claim is based on mesne conveyances from Evans.

The district court rendered judgment recognizing The Mengel Company to be entitled to the fund so deposited in the registry of the court as well as to all other funds that might accrue and become due under the disputed royalty interest. An appeal was taken from this judgment by Evans and Caraway to the Court of Appeal, Second Circuit, and that court ordered the appeal transferred to this court after finding that the amount in dispute in this interpleader proceeding was in excess of $2000.00. See Standard Oil Co. of New Jersey v. Evans et al., La.App., 37 So.2d 604.

By deed dated May 10, 1939, duly filed in the conveyance and mortgage records of Richland Parish, The Mengel Company conveyed the property on which the well is located to George W. Evans, and a mortgage was executed on the property to secure the payment of the purchase price. *In this act of sale the vendor reserved unto itself all minerals lying in, under, and upon said property.* This deed after the clause in which this reservation was made then provided:

"It Is Further understood and agreed by the parties hereto that in the event the vendor, its assigns, successors or Lessees should recover any mineral property of any kind, and there should be any mineral development or production on said property, then and in that event the vendee, his successors or assigns shall receive one half of

whatever royalty that may be stipulated in favor of or received by the said The Mengel Company,. or its successors or assigns, on account of mineral development, or the production of said mineral or minerals, provided that the royalty to be received by the said vendee, his heirs or assigns, shall never exceed what is commonly known as a 1/16 royalty, that is, one-sixteenth of the total production; it being further and fully understood that the said royalty to be received by the said vendee, his heirs or assigns is to be paid as liquidated damages for any and all injury that may be done to the surface of said lands, to any crops growing thereon, or to any improvements that may be on the said premises, by the vendor, its successors or assigns, in the production, handling or marketing of any minerals under the rights herein reserved * * *."

On November 20, 1943, The Mengel Company, represented by H. C. Watson as its special agent and attorney in fact, conveyed by warranty deed to Evans an undivided 1/2 of the oil, gas, and other minerals which it had previously reserved in the deed to Evans of May 10, 1939. The deed in which 1/2 of the minerals was conveyed provided that H. C. Watson, its special agent and attorney in fact, was appearing therein for and in behalf of The Mengel Company, as per resolution of said corporation on file and of record in Notarial Book 74, page 168, of the records of Richland Parish. On the date this mineral deed was executed the mortgage securing the purchase price of the land was still outstanding and unpaid.

The recorded resolution of the board of directors of The Mengel Company, by authority of which Watson appeared for and in behalf of the corporation, recited that the corporation had sold to various purchasers sundry tracts of land in Richland Parish on terms of credit, the purchase price being secured by vendor's lien and special mortgage on the property so sold, and that in these sales The Mengel Company had *"reserved the minerals under the land sold save and except that the purchaser, in the event of production of oil or gas or other minerals from the said tract, shall receive one-sixteenth royalty out of the said production"*, and that many of the purchasers had not paid the purchase price and were making applications to the Federal Land Bank of New Orleans for loans in order to liquidate their indebtedness to The Mengel Company. The resolution then stipulated:

"* * * Whereas, it appears that the Federal Land Bank of New Orleans and the Commissioner in direct loans require the borrower to be seized of a certain proportion of the said minerals, and

"Whereas, The Mengel Company is anxious to co-operate with its debtors for lands purchased from it in Richland Parish, Louisiana, * * *."

The resolution of the board of directors then named H. C. Watson as special agent

and attorney in fact to the corporation, with full authority for and in the name of the corporation to do and perform the following acts:

"* * * Second: To release or quit claim, transfer, sell or assign over to any person who has purchased lands from The Mengel Company in Richland Parish, Louisiana, in which the said The Mengel Company has retained the mineral rights thereunder, *a sufficient amount of the said mineral rights so retained to make the ownership of the said mineral rights equal in the said purchaser and The Mengel Company.* * * *" (All italics ours.)

The loan from the Federal Land Bank to Evans was consummated, and the proceeds thereof were paid to The Mengel Company in order to extinguish the mortgage indebtedness to that company by Evans.

It is not disputed that the ownership of a 1/2 interest in the minerals is vested in Evans and his transferees. The entire issue is whether they are entitled in addition thereto to a 1/16 royalty which they claim is due as liquidated damages under the deed of May 10, 1939, by which Evans acquired the land. In other words, if these claimants are correct in this contention, they and their transferees are entitled, in addition to the 1/2 of the usual 1/8 royalty (or a 1/16 royalty) flowing from Evans' purchase of an undivided 1/2 of the minerals, to an additional 1/16 royalty, or all of the usual 1/8 royalty, so that The Mengel Company would not receive any portion of the usual 1/8 royalty reserved in oil and gas leases.

In our opinion, the authority of the agent given in the power of attorney or resolution adopted by The Mengel Company, under which he acted, is decisive of the issue here presented. The appellants take the position that we cannot consider the resolution or its contents to determine what was conveyed to Evans by the Mengel mineral deed, urging in support thereof the well established principle of law that, in the absence of any ambiguity, the intent of the parties must be gathered from the instrument itself without the aid of extrinsic evidence. This rule of law, however, has no application here, for the Mengel mineral deed sets forth that The Mengel Company was represented by Watson, its special agent and attorney in fact, and that he was duly authorized to appear therein for and in behalf of the corporation as per resolution on file and of record in the notarial records of Richland Parish, Louisiana. The resolution must therefore be considered with this instrument, just as if written therein, and cannot be regarded as extrinsic evidence.

"Extrinsic" is defined by Webster's New International Dictionary (2d ed.) as "Pertaining to, or derived from, things outside; extraneous;—applied specif. in law to evidence not afforded by an instrument or document in itself". Black's Law Dictionary (de luxe ed.) defines "extrinsic

evidence" as " * * * external evidence, or that which is not contained in the body of an agreement, contract, and the like. * * * "

■ Furthermore, the resolution was recorded in the public records, and these claimants were charged with full notice thereof. The resolution must necessarily be considered in connection with the deed, because without the resolution Watson had no authority to convey, and Evans would have received nothing by the mineral deed. Louisiana Sulphur Mining Co. v. Brimstone R. & Canal Co., 143 La. 743, 79 So. 324. See Civil Code, Articles 2275 and 2992; Turner v. Snype, 162 La. 117, 110 So. 109.

■■ Under the provisions of our Revised Civil Code, a mandate confers only power of administration, and, if it be necessary to alienate or do any other act of ownership, the power must be express; for example, the power to sell or buy must be express and special. Under such a mandate the attorney cannot go beyond the limits of his procuration, and whatever he does in excess of his power is null and void with regard to the principle unless ratified. Further, attorneys in fact or officers appointed by a corporation, by contracting, bind the corporations to which they belong in such things as do not exceed the limits of the administration which is entrusted to them. See Articles 2996, 2997, 3010, and 439. See also Louisiana Sulphur Mining Co. v. Brimstone R. & Canal Co., supra.

■ The terms of the resolution giving authority to the agent in this case are clear and unambiguous. The agent, Watson, was authorized to convey "a sufficient amount of the said mineral rights so retained [by The Mengel Company] to make the ownership of the said mineral rights equal in said purchaser [Evans] and The Mengel Company". Under appellants' theory of the case, the ownership in the mineral rights would not be equal, and Watson would have exceeded his authority.

The resolution makes it perfectly apparent that the purpose thereof was to give the purchasers from The Mengel Company a sufficient mineral interest so that they could borrow money from the Federal Land Bank, and with funds so secured extinguish the borrowers' mortgage indebtedness to The Mengel Company. To effectuate this purpose the agent was authorized to convey a sufficient amount (that is, whatever interest might be required) of the mineral rights retained and owned by The Mengel Company in order to make the ownership in the minerals *equal as between the parties*. Nowhere in the resolution was the agent given any authority—nor was it the intention of The Mengel Company as disclosed by the entire resolution—to grant to Evans 1/2 of the minerals in addition to any interest already in him.

When the deed is read with the resolution, it is clear that Watson conveyed, and could only convey, a sufficient amount of

the minerals to make the ownership therein equal in the parties to the act, and the judgment of the lower court recognizing The Mengel Company to be the owner of the fund in the registry of the court is therefore correct.

Appellants say that the judgment of the lower court is erroneous in that it failed to recognize the distinction between "mineral rights" and "royalty rights" as these rights have been defined by this court in numerous cases, and they cite St. Martin Land Co. v. Pinckney, 212 La. 605, 33 So. 2d 169; Union Sulphur Co., Inc., v. Lognion, 212 La. 632, 33 So.2d 178, and Humble Oil & Refining Co. v. Guillory, 212 La. 646, 33 So.2d 182. They contend that, before the mineral deed was executed, Evans did not own any "mineral rights" under the property as that term has been defined in these cases, but that instead he had a different right which they term "liquidated damages" for injury to the property by exploration, payable out of the proceeds from 1/2 of the royalty, not to exceed 1/16 of production. They urge therefore that the deed by which he was conveyed a mineral interest did not affect his right to these liquidated damages, but conveyed something over and above that.

Our answer to this is that it is immaterial whether the right conveyed to Evans in his deed of purchase of the land be called *a royalty not to exceed 1/16 of production* or *liquidated damages,* since the resolution or power of attorney to Watson makes it clear that, after taking into consideration that right, whatever it be called, he was to convey over and above it a sufficient amount of the mineral rights to make the ownership in the mineral rights equal between the parties.

Appellants contend that the judgment of the district court had the effect of extinguishing the obligation of The Mengel Company to Evans in the deed of purchase to pay liquidated damages, without there having ever been any act on the part of Evans showing consent to that extinguishment. Evans has not parted with anything, nor has anything been taken from him. On the contrary, he has been granted rights in addition to those rights which he had under his original deed of purchase.

There is no merit in appellants' contention that The Mengel Company is estopped to deny their contention in regard to the mineral deed executed by its agent, Watson. The Mengel Company's acceptance of the consideration named in the mineral deed, the sum of $10.00, and also of the amount due under the mortgage on the property cannot act as an estoppel, as these amounts were rightly due and owing by Evans. The inaction or silence of The Mengel Company, under the circumstances of this case, cannot estop it from asserting its rights, for the resolution and the mineral deed could not have misled Evans to his prejudice or induced him to forego some advantage.

■ The judgment of the district court in the instant case assessed all costs against the claimants Evans and Caraway. In this respect it will have to be amended, for under the provisions of Section 6 of Act No. 123 of 1922, as amended, R.S. 13:4816, all of such costs shall be paid from the fund deposited in the registry of the court, with the right reserved to The Mengel Company, the successful litigant for the funds deposited, to recover all costs which have been paid out of the fund deposited from the other litigants who contested its right thereto.

For the reasons assigned, the judgment is amended so as to assess the costs in accordance with the provisions of Act No. 123 of 1922, as amended, R.S. 13:4816, and as thus amended is affirmed.