GLADNEY, Judge.
Mrs. Naomi Brantley, plaintiff herein, appeals from a judgment rejecting her demands for recovery of $2,000 and $300 attorney’s fees allegedly due by reason of defendant’s refusal to pay a check. This appeal was originally filed with the Supreme Court of Louisiana but upon jurisdictional grounds it was transferred to this court. See Brantley v. Tugwell, 223 La. 763, 66 So.2d 800.
This legal dispute arose in connection with a transaction for the sale of certain mineral rights owned by plaintiff.. On June 22, 1947, Mrs. H. L. Phelps was visiting in the household of her cousin, Mrs. Monroe Tucker, and while there informed Monroe Tucker that her daughter, Mrs. Naomi Brantley, wished to sell a few mineral acres and asked him if he knew of anyone who would be willing to purchase such acres at the rate of $200 per mineral acre.
Tucker then proceeded to the Town of Farmerville where he encountered defendant Metz R. Tugwell in the act of departing for Monroe arid informed him that Mrs. Phelps who' had a power pf attorney from her daughter was agreeable to selling certain mineral acres and informed him of the price. Tugwell. stated that he would purchase ten mineral acres at the rate of $200 per acre and proceeded with Tucker to the office of the Farmerville Gazette and there secured several forms of mineral deeds identified as “Bath Form C, Stock Form MD 4-37”. He gave these forms to Monroe Tucker and upon the latter’s insistence that Mrs. Phelps was about to go to Texas to visit her daughter, he gave a check for $2,000 drawn on the Farmerville Bank. Tugwell then left for Monroe and knew nothing further of the deal until the following morning. Monroe Tucker contacted Mrs. Phelps and by means of a telephone conversation with plaintiff the transaction was approved.
Mrs. Phelps and Monroe Tucker on that same day went to the office of an attorney and notary, J. R. Dawkins, for the purpose of having the mineral deed executed and upon arriving there Tucker produced the mineral forms delivered to him by Tug-well. Mrs. Phelps, however, informed Dawkins that she wished said instrument to contain the same language inserted in an instrument previously executed by her. Following these instructions the attorney inserted a reservation in favor of the grantor reading: “Grantor reserves the right to receive and have all the money delay rentals paid or to. be paid under the terms of the existing lease on the above described property. The vendor herein reserves the right to grant future oil, gas and mineral leases affecting said land without the consent of vendee, and the further right to collect and retain all bonuses and delay rentals paid thereunder.”
Monroe Tucker received the instrument as executed by Mrs. Phelps and delivered to Mrs. Phelps the check for $2,000. Tug-well was still in Monroe and was not present when the document was executed.
By prior arrangement Tucker and Tug-well met about 9:00 A. M. at the Fanner-ville Bank on the following morning, June 23, 1947, at which time Tucker produced the instrument as executed. Upon examination Tugwell informed him that the deed as written was not acceptable and unless the parties would forthwith eliminate the reservation he wished his check back. Tug-well, without further delay, through an official of the bank, ordered payment on the check stopped. Tucker went to contact Mrs. Phelps but upon arriving at her home found that she had departed for Minden, Louisiana. Being unable to contact Mrs. Phelps Tucker discussed the situation with one of Mrs. Phelps’ daughters, who told him she did not believe Mrs. Phelps would agree to eliminate the reservation in the instrument.
Mrs. Phelps had apparently continued her trip to Texas where she delivered the check to appellant who deposited the same for collection. The check was turned down on June 28, 1947, in obedience to Tugwell’s instructions. Monroe Tucker retained the rejected instrument in his possession for some little time and then, according to his testimony, he destroyed it.
*795 On this appeal it is asserted that the judgment from which appealed is in error for the reason that appellee’s defense of want of consideration was not established, it being argued, first, that Monroe Tucker was an agent of Tugwell and his delivery of the check constituted an acceptance of the instrument as drawn by the defendant, and further, that the burden of proof of establishing the special defense of want of consideration was not discharged by the defendant.
The trial court in written reasons for its decision found that Monroe Tucker was not the agent of the defendant and, in fact, was not the agent of either Mrs. Phelps or the defendant, and the insertions in the instrument directed by Mrs. Phelps constituted a material change in the proposed contract as understood by Tugwell, and, therefore, there was no meeting of minds as necessary to bring into being a contract between the parties.
Title XV — Of Mandate, LSA-Civil Code of Louisiana art. 2985 et seq., prescribes generally the obligations of those dependent upon a power of attorney for the efficacy of their contracts. Under these provisions only a power of administration is conferred and where it becomes necessary to alienate or to exercise any other act of ownership the power of attorney must be expressed. Especially is this so where the object of the transaction is to buy or sell real estate or real rights. It is clearly provided that under such a mandate the attorney cannot go beyond the limits of his procuration and that done in excess of his power is null and void with regard to the principal unless ratified. LSA-C.C. arts. 2996, 2997 and 3010. Louisiana Sulphur Mining Co. v. Brimstone R. & Canal Co., 1918, 143 La. 743, 79 So. 324; Turner v. Snype, 1926, 162 La. 117, 110 So. 109; Standard Oil Company of New Jersey v. Eyans, 1950, 218 La. 590, 50 So.2d 203.
There is no evidence in the record that Monroe Tucker had any express authority from Tugwell to act as his agent in the transaction. Tucker did not regard himself as an agent of either Tugwell or Mrs. Phelps. He received no remuneration from either party. He testified that he acted simply to help Mrs. Brantley sell some of her minerals. Under these circumstances we agree with the holding of the judge a quo that Tucker was not the agent, express or implied, of either of the parties in the transaction. If this be true, it is quite clear that the act of Monroe Tucker in receiving the executed instrument . containing the reservation placed therein by Mrs. Phelps did not bind Tug-well to accept the instrument as written. Tugwell insists that the only type of instrument he was buying was a straight mineral sale such as prescribed in the forms he delivered Tucker. Mr. Dawkins gave this testimony which gives some corroboration to the position taken by defendant. He testified:
“Along about that particular time I do not think that any of the buyers, as far as that is concerned, including Mr. Tugwell, were buying where there was a waiver of direct rentals and bonuses relating to future leases, because of the decision in the Humble Oil Company case. They were buying with reservation of the rentals and bonuses with reference to the then existing lease. That was the usual policy.”
Manifestly, by inserting into the proposed mineral deed the right of grantor to receive all rentals from the existing lease, to execute without consultation of the grantee any future mineral lease, and to retain all the bonuses and rentals which might accrue thereunder, substantially reduced the value of the mineral deed Tug-well had-in mind purchasing.
LSA-C.C. art. 1766 declares no contract is complete without the consent of both parties. In the instant case Tugwell did not give his consent to the instrument as executed by Mrs. Phelps. There was no meeting of minds and there could be no contract unless ratification occurred. Tug-well did not see Tucker until about 9:00 o’clock on the following day, June 23, 1947, when for the first time he read the deed as executed and immediately rejected the *796 written act and instructed that payment on the check be stopped. There was, therefore, no ratification.
Plaintiff earnestly asserts that the plea of want of consideration by the maker of a negotiable instrument is a special defense and imposes upon the pleader thereof the burden of proving the defense of want and consideration. We have no disagreement with this statement of law, but, as we see it, the record clearly establishes the defense.
From the foregoing we are impelled to conclude that defendant’s consent was never given, and without such consent there could, of course, be no contract unless ratified by defendant. Defendant promptly rejected the instrument as changed by Mrs. Phelps and did this immediately by stopping payment upon his check. The judgment from which appealed, therefore, should be affirmed at appellant’s cost.