In re MANVILLE FOREST PRODUCTS
CORPORATION, Debtor.

GULF STATES EXPLORATION
CO., Appellant,

v.

MANVILLE FOREST PRODUCTS
CORPORATION, Appellee.

No. 589, Docket 89–5019.

United States Court of Appeals,
Second Circuit.

Argued Dec. 21, 1989.

Decided Feb. 7, 1990.

Frederick W. Bradley, New Orleans, La. (Liskow & Lewis, New Orleans, La., Lansing R. Palmer, New York City, John T. McMahon, and Elkins & Yount, Houston, Tex., on the brief), for appellant Gulf States Exploration Co.

C.A. Martin III, Monroe, La. (George Wear, Jr., and Shotwell, Brown & Sperry, Monroe, La., Edmund M. Emrich, and Levin, Weintraub & Crames, New York City, on the brief), for appellee Manville Forest Products Corp.

Before TIMBERS, CARDAMONE and PRATT, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Gulf States Exploration Co. ("Gulf") appeals from an order entered May 9, 1989, in the Southern District of New York, Michael B. Mukasey, *District Judge*, affirming an order of the bankruptcy court, Burton R. Lifland, *Chief Bankruptcy Judge*, entered August 5, 1988, which expunged Gulf's proof of claim filed

in the bankruptcy proceeding of Manville Forest Products Corporation ("M.F.P."). *In re Manville Forest Products Corp.*, 89 B.R. 358 (Bankr.S.D.N.Y.1988). The proof of claim alleged that M.F.P. breached a hydrocarbon exploration agreement by refusing to grant Gulf drilling rights in a geological formation known as the "Wilcox". The bankruptcy court held that M.F.P. fully sustained its objection to Gulf's proof of claim, and accordingly expunged the claim. It further held that, even if Gulf were entitled to damages for the alleged contract breach, it could not assert the claims of its working interest partners. The district court affirmed the order of the bankruptcy court, but declined to consider the claims of Gulf's working interest partners since it found against Gulf on the merits.

Gulf also appeals from an order entered April 30, 1986, in the Southern District of New York, John E. Sprizzo, *District Judge*, denying Gulf's motion to withdraw the reference to the bankruptcy court and affirming an order of the bankruptcy court, entered November 19, 1985, which denied Gulf's motion for transfer of venue and held that the adversary proceeding constituted a "core" proceeding within the meaning of 28 U.S.C. § 157 (1988).

On appeal, Gulf contends that Judge Sprizzo erred in affirming the bankruptcy court's determination that the adversary proceeding is a core proceeding, and in denying its motion to withdraw the reference to the bankruptcy court. It also contends that the court erred in affirming the bankruptcy court's denial of its motion for transfer of venue. With respect to its breach of contract claim, Gulf contends that Judge Mukasey incorrectly applied Louisiana law to the hydrocarbon exploration agreement. Specifically, Gulf contends that Judge Mukasey erred (1) in applying the doctrines of apparent authority and agency by estoppel; (2) in applying the doctrine of ratification; and (3) in interpreting the agreement. It also contends that the district court erred in declining to consider the bankruptcy court's holding that it could not assert the claims of its working interest partners.

For the reasons which follow, we affirm the orders of Judge Sprizzo and Judge Mukasey in all respects.

We reach our determination of the issue of core jurisdiction in light of *In re Ben Cooper, Inc.*, 896 F.2d 1394 (2 Cir.1990), also decided today, and assume familiarity with that opinion.

## I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

On August 26, 1982, M.F.P., a wholly owned subsidiary of Manville Corporation, filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Prior to this filing, M.F.P. and Gulf, an oil and gas exploration company wholly owned by Gulf States Oil and Refining Company, entered into a hydrocarbon exploration agreement.

In October 1980, J.C. Ogden, chief operating officer of Gulf, approached and negotiated with Donald R. Worden to obtain rights to explore for, and develop, oil and gas on properties owned by M.F.P. in Louisiana. Worden, who was Exploration and Mineral Manager of M.F.P. and, after May 1982, Director of Energy Resources, had express written authority from M.F.P.'s president, John D. Mullens, to bind M.F.P. to contracts and leases for up to 1000 acres. This limited authority was filed in the public records of Grant Parish, Louisiana.

The negotiations between Ogden and Worden involved a particular area of M.F.P.'s property known as sections 4–10, Township 8 North, Range 3 West, Grant Parish, Louisiana (the "area of interest"). Ogden believed that two rock formations in the area of interest, the Mooringsport (a deep formation found at 9,000 to 10,000 feet beneath the earth's surface) and the Wilcox (a shallow formation at 1200 to 4400 feet), would produce oil. The area of interest involved more than 1000 acres of land

and therefore was in excess of Worden's granted authority.

In October 1980, Worden had M.F.P.'s counsel draft an exploration agreement, which Mullens signed on behalf of M.F.P. Worden signed this agreement merely as a witness. The agreement explicitly excluded mineral rights to the Wilcox formation. Nevertheless, it required Gulf to "log" the Wilcox each time it drilled through that formation to the deeper Mooringsport. "Logging" is an electronic method used to determine the potential for oil and gas production in a formation.

Ogden found the agreement unacceptable because it excluded the Wilcox and limited leases to 160 acres. In January 1981, Worden agreed to include the Wilcox in the exploration agreement. Several proposed changes were added by Gulf as interlineations to the agreement. One of these interlineations provided that the Wilcox formation was "to be included under separate agreement." Ogden signed the interlineated exploration agreement on behalf of Gulf on January 2, 1981, but held it until he received assurances from Worden that a letter regarding the Wilcox was forthcoming.

On February 11, 1981, Worden prepared, signed and mailed a letter (the "Wilcox letter") regarding Gulf's rights in the Wilcox formation. In response to Worden's assurance that the letter had been sent, Ogden sent the interlineated agreement to Worden, who, upon receipt, initialled the interlineations. Both the interlineated agreement and the Wilcox letter involved more than 1000 acres of land, which exceeded Worden's authority to execute contracts and leases on behalf of M.F.P. Mullens, however, did not sign the Wilcox letter, nor did he initial the changes on behalf of M.F.P.

In 1981, Gulf drilled four wells in the area of interest. Gulf's logs of the Wilcox formation, which were sent to M.F.P. pursuant to the exploration agreement (both original and interlineated), indicated possible productive hydrocarbon "shows" (i.e., indications of potential reservoirs of oil).

In mid-May 1982, Worden showed the logs to one Jim V. Haddox. Haddox requested a lease. In late May, Worden sent the logs to the Hogan Exploration Company ("Hogan"). After reviewing the logs, Robert F. Meredith, president of Hogan, requested a lease on June 16, 1982. Worden replied that Haddox previously had requested the rights to the Wilcox formation and suggested that Meredith and Haddox should resolve the matter between themselves. Meredith and Haddox settled on an arrangement and informed Worden on June 27, 1982 of their agreement that Hogan acquire the lease. On August 9, 1982, Worden executed a revised Wilcox lease in favor of Hogan, effective as of June 16, 1982, the date of the verbal request by Meredith.

In early August 1982, Ogden requested on behalf of Gulf a lease for drilling rights to the Wilcox. Worden, however, refused because M.F.P. already had granted the lease to Hogan.

M.F.P. filed a petition for reorganization under Chapter 11 on August 26, 1982, in the bankruptcy court for the Southern District of New York. Gulf timely filed a proof of claim, alleging that M.F.P.'s refusal to grant the Wilcox rights constituted a breach of contract. It sought $16,035,000 damages. M.F.P. objected to the proof of claim. It did not assert any counterclaims against Gulf.

At a hearing held on November 6, 1985, the bankruptcy court denied Gulf's motion for transfer of venue of the adversary proceeding to the United States District Court for the Western District of Louisiana, based principally on the following grounds: (1) its in-depth involvement in the matter; (2) its responsibility to adjudicate the remaining issues in the case; and (3) its view that it would be inappropriate to shift the burden of determining those issues to another court, which would have "to adopt and be involved in a new learning curve." The court also held that the adversary proceeding constituted a "core" proceeding within the meaning of 28 U.S.C. § 157 (1988), reasoning that the adversary proceeding involved a plain and simple objec-

tion to a claim and, accordingly, was clearly a "core matter." Gulf appealed to the district court, and also filed a motion to withdraw the reference to the bankruptcy court pursuant to 28 U.S.C. § 157(d), on the ground that *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), required that its breach of contract claim be adjudicated by an Article III judge. On April 30, 1986, Judge Sprizzo affirmed the order of the bankruptcy court in all respects and refused to withdraw the reference.

By an order entered August 5, 1988, the bankruptcy court, after a bench trial, concluded that M.F.P. sustained its objection to Gulf's proof of claim and accordingly expunged the claim. *Manville, supra*, 89 B.R. at 377. It determined that Louisiana law does not recognize the doctrines of apparent authority or implied ratification for contracts involving immovable property. It further found that, even if such doctrines applied, the interlineated agreement and the Wilcox letter were not enforceable because Gulf failed to establish apparent authority or implied ratification. Moreover, it found that, even assuming the validity of the interlineated agreement and the Wilcox letter, M.F.P. did not breach the terms of the agreement by leasing the Wilcox formation to Hogan. Finally, it held that, since none of Gulf's working interest partners filed proofs of claim or timely authorized Gulf to file for them, Gulf could not assert claims on their behalf.

On appeal to the district court, Judge Mukasey affirmed the order of the bankruptcy court by an order entered May 9, 1989, concluding that the bankruptcy court correctly applied Louisiana law, and that the court's findings of fact were not clearly erroneous. He declined, however, to reach the claims of Gulf's working interest partners since he found against Gulf on the merits.

This appeal followed.

## II.

As a preliminary matter, we set forth our standard of review of orders of the district courts in their capacity as appellate courts. Our review of those orders is plenary. *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3 Cir.1988); *In re Woodson Co.*, 813 F.2d 266, 270 (9 Cir.1987). Accordingly, we independently review the factual findings and legal conclusions of the bankruptcy court. *Brown, supra*, 851 F.2d at 84; *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8 Cir.1987); *Woodson, supra*, 813 F.2d at 270. We must accept the bankruptcy court's findings of fact unless clearly erroneous. *Brunner v. New York State Higher Educ. Services, Corp.*, 831 F.2d 395, 396 (2 Cir.1987) (per curiam); Bankr. Rule 8013. We will reverse the bankruptcy court only if we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). Of course, we review conclusions of law de novo. *Brunner, supra*, 831 F.2d at 396.

## III.

With the foregoing in mind, we turn now to the jurisdictional issue whether this adversary proceeding constituted a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2) (1988), as well as the constitutional limits set forth in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982). As a legal issue, we review de novo Judge Sprizzo's decision that the adversary proceeding constituted a core proceeding. *Brunner, supra*, 831 F.2d at 396.

Gulf contends that the district court erred in affirming the bankruptcy court's determination that the adversary proceeding was core, and in denying its motion to withdraw the reference to the bankruptcy court pursuant to 28 U.S.C. § 157(d). It asserts that *Marathon* requires that its state law breach of contract claim be adjudicated by an Article III judge. We believe, however, that Gulf misreads *Marathon*, and that the adversary proceeding, which involves an objection to a proof of claim filed in M.F.P.'s bankruptcy case, clearly falls within the core of federal bankruptcy power.

Our analysis begins with § 157, which was enacted in response to the Supreme Court's decision in *Marathon. Cooper, supra*, 896 F.2d at 1398. That section categorizes all proceedings as either core or non-core. Upon referral from the district court, the bankruptcy court "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 ... and may enter appropriate orders and judgments." § 157(b)(1). Section 157(b)(2) provides a nonexhaustive list of core proceedings, including one matter directly applicable to the instant adversary proceeding: "allowance or disallowance of claims against the estate."

Non-core proceedings, on the other hand, are those which are "otherwise related to a case under title 11." § 157(b)(3). Although a bankruptcy court may hear such proceedings, absent consent of the parties, it cannot enter a final order or judgment but must "submit proposed findings of fact and conclusions of law to the district court", which reviews de novo "those matters to which any party has timely and specifically objected." § 157(c)(1).

■ Section 157(b)(3) expressly provides that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." Hence, the mere fact that Gulf's claim raises issues of state law does not preclude a holding that the adversary proceeding is core. *Cooper, supra*, 896 F.2d at 1399. The relevant inquiry is whether the nature of this adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy power. *In re Wood*, 825 F.2d 90, 97 (5 Cir.1987) (Wisdom, J.); *In re Arnold Print Works, Inc.*, 815 F.2d 165, 169 (1 Cir.1987) (Breyer, J.).

■ The adversary proceeding at issue here involves a simple objection to a proof of claim and clearly falls within the literal language of § 157(b)(2)(B), which provides that all proceedings involving the "allowance or disallowance of claims against the estate" (other than proceedings involving

"the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11") are core matters. Despite this statutory language, however, Gulf contends that its state law breach of contract claim is merely "related to" the bankruptcy case, and that such claim would have been filed in the state court but for the bankruptcy filing. Thus, Gulf argues, *Marathon* requires such claim to be adjudicated by an Article III judge. We disagree.

*Marathon, supra*, 458 U.S. at 50, which invalidated the broad grant of jurisdiction to bankruptcy courts provided for in the Bankruptcy Act of 1978, 28 U.S.C. § 1471 (Supp. IV 1980), involved a pre-petition breach of contract action brought by the Chapter 11 debtor in the bankruptcy court against the defendant. The defendant had not filed a proof of claim and apparently had no other connection with the bankruptcy case. Justice Brennan, writing for a plurality, distinguished "the restructuring of debtor-creditor relations, which is at the *core* of the federal bankruptcy power," from the "adjudication of state-created private rights." *Marathon, supra*, 458 U.S. at 71 (emphasis added). The Court held that state-created private rights, such as the debtor's breach of contract claim, must be adjudicated by an Article III judge. *Id.* at 69–70, 84 *see also Cooper, supra*, 896 F.2d at 1398.

■ While it is true that the instant adversary proceeding involved a pre-petition breach of contract claim, as in *Marathon*, there is one crucial distinction which Gulf ignores. Unlike the defendant in *Marathon*, Gulf filed a proof of claim in M.F.P.'s Chapter 11 case. By filing a proof of claim, Gulf submitted itself to the equitable power of the bankruptcy court to disallow its claim. *Granfinanciera, S.A. v. Nordberg*, 109 S.Ct. 2782, 2799, n. 14 (1989). As the Fifth Circuit aptly explained,

"A claim against the estate is instituted by filing a proof of claim as provided by the bankruptcy rules. The filing of the proof invokes the special rules of bankruptcy concerning objections to the

claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution. *Understood in this sense, a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy.* Of course, the state-law right underlying the claim could be enforced in a state court proceeding absent the bankruptcy, but the nature of the state proceeding would be different from the nature of the proceeding following the filing of a proof of claim."

*Wood, supra,* 825 F.2d at 97 (footnotes omitted) (emphasis added); *see also In re Bar M Petroleum Co.,* 63 B.R. 343, 346 (Bankr.W.D.Tex.1986) ("By filing proof of claim, Defendant has become a party in interest in the Chapter 11 case and is asserting a right to participate in the distribution under the Debtor's Plan. Section 157(b)(2)(B) lists the allowance or disallowance of claims against the estate as core proceedings, and 11 U.S.C. § 502(b) requires the [Bankruptcy] Court to determine the amount of a claim where the claim has been objected to."). Gulf, unlike the defendant in *Marathon,* is not a third party related only peripherally to the adjudication of M.F.P.'s bankruptcy case. The determination of the objection to and allowance of its claim is clearly within the traditional core jurisdiction of the bankruptcy court. *Marathon, supra,* 458 U.S. at 84 n. 36, ("Of course, bankruptcy adjudications themselves, as well as the manner in which the rights of debtors and creditors are adjusted, are matters of federal law."); *In re Lion Capital Group,* 46 B.R. 850, 860 (Bankr.S.D.N.Y.1985) ("Adjustment of claims against an estate has been and remains central to bankruptcy proceedings.").

Moreover, the majority of courts that have considered the issue have held that proceedings to determine the allowance and disallowance of claims against the estate are core. *E.g., Wood, supra,* 825 F.2d at 97; *In re Bokum Resources Corp.,* 64 B.R. 924, 927 (Bankr.D.N.M.1986); *Bar M Petroleum Co., supra,* 63 B.R. at 346; *Hautyin v. Grynberg,* 52 B.R. 657, 661 (Bankr. D.Colo.1985); *In re Vic Snyder, Inc.,* 50

B.R. 631, 633 & n. 4 (Bankr.E.D.Pa.1985); *Lion Capital Group, supra,* 46 B.R. at 860; *see also Katchen v. Landy,* 382 U.S. 323, 329–30 (1966); *In re Colorado Energy Supply, Inc.,* 728 F.2d 1283, 1286 (10 Cir. 1984); King, 1 Collier on Bankruptcy ¶ 3.01[2][b][iii], at 3–40 (15th ed. 1989) ("There has never been any doubt about the constitutional authority of a non-tenured judge to enter final orders in such matters, which are unique to bankruptcy cases.").

In view of the foregoing, we hold that the instant adversary proceeding, which involves the determination of an objection to a proof of claim filed in the bankruptcy case, is clearly at the core of the federal bankruptcy function of restructuring debtor-creditor rights, implicating the unique powers of bankruptcy courts.

## IV.

This brings us to the issue whether Judge Sprizzo abused his discretion in affirming the order of the bankruptcy court which denied Gulf's motion to transfer venue to the Western District of Louisiana pursuant to 28 U.S.C. § 1412 (1988). Gulf asserts that all of the relevant acts occurred in the Western District of Louisiana, that M.F.P. and its counsel reside there, that almost all of the witnesses who testified for M.F.P. reside in Louisiana, and that Gulf and its witnesses reside in Texas. Moreover, it points out that Worden, the most important witness in the case, is a resident of Louisiana and could not be compelled to testify at trial in the Southern District of New York. Thus, Gulf argues that transfer was required for the convenience of the parties and witnesses and in the interest of justice.

Under 28 U.S.C. § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." The party moving for change of venue bears the burden of proof and that burden must be carried by a preponderance of the evidence. *In re Legend Indus., Inc.,* 49 B.R.

935, 938 (Bankr.E.D.N.Y.1985); *In re Butcher*, 46 B.R. 109, 112 (Bankr.N.D.Ga. 1985); 1 Collier, *supra*, ¶ 3.02[4][a], at 3–153. Moreover, the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy. *In re Lionel Corp.*, 24 B.R. 141, 143 (Bankr.S.D.N.Y.1982); 1 Collier, *supra*, at ¶ 3.02[4][a], at 3–153. In reviewing Judge Sprizzo's denial of the motion for transfer of venue, we are guided by the Supreme Court's recent decision in *Stewart Org., Inc. v. Ricoh Corp.*, 108 S.Ct. 2239 (1988). There the Court held, in the context of 28 U.S.C. § 1404(a) (1982), that adjudication of motions for transfer are within the discretionary authority of the district courts, according to "an 'individualized, case-by-case consideration of convenience and fairness.'" *Id.* at 2244 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, (1964)).

■ With *Stewart* in mind, we reject Gulf's contention that the bankruptcy court and Judge Sprizzo applied "criteria that are contrary to those articulated in recent cases under 28 U.S.C. § 1412." The "interest of justice" component of § 1412 is a broad and flexible standard which must be applied on a case-by-case basis. It contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness—factors that the bankruptcy court and Judge Sprizzo properly considered.

■ Judge Sprizzo, reviewing de novo the venue order of the bankruptcy court, found that the convenience of the parties and witnesses weighed in favor of Gulf's position. However, he correctly found other factors relating to the efficient administration of the bankruptcy estate which cut against transferring venue. He found that the bankruptcy court had developed a substantial "learning curve" and that transferring venue would have delayed the final resolution of the bankruptcy case. Thus, he agreed with the bankruptcy court's view that it would have been inappropriate to shift the burden of adjudicating the instant proceeding to another court. Moreover, he found that Gulf's motion for transfer of venue was untimely. Balancing the "convenience of parties" factor against the "interest of justice" factor, he properly concluded that Gulf had not sustained its burden of proof.

We hold that Judge Sprizzo correctly balanced the appropriate factors in a § 1412 inquiry. We agree that Gulf did not sustain its burden of proof and did not overcome the presumption that the Southern District of New York, the district in which M.F.P. filed its bankruptcy petition, was the appropriate district for hearing and determination of the adversary proceeding. Accordingly, we hold that the denial of Gulf's motion for transfer of venue was within Judge Sprizzo's discretion, and he did not abuse that discretion.

## V.

Having resolved the jurisdictional and venue issues, we now consider the merits of Gulf's breach of contract claim.

### (A)

Relying on a Louisiana appellate court decision, *Tedesco v. Gentry Dev., Inc.* 521 So.2d 717 (La.Ct.App.1988), the bankruptcy court decided that the doctrine of apparent authority was inapplicable to contracts involving immovable property. *Manville, supra*, 89 B.R. at 367. It further held that, even if the doctrine applied to the instant proceeding, Gulf failed to meet its burden of satisfying the doctrine's prerequisites. *Id.* Judge Mukasey agreed, pointing out that the Louisiana Supreme Court recently affirmed the *Tedesco* decision. *Tedesco v. Gentry Dev., Inc.*, 540 So.2d 960 (La.1989). He noted, however, that *Tedesco* "left open the possibility that the doctrine of agency by estoppel would apply."

Gulf challenges Judge Mukasey's understanding of *Tedesco*, asserting that the Louisiana Supreme Court's "comments on the issues of apparent authority and agency by estoppel make it clear that Louisiana law would recognize and fully enforce the contract that existed between [Gulf and

M.F.P.]." Equitable principles, Gulf argues, would provide relief because Gulf relied to its detriment on Worden's apparent authority, expending funds on the Wilcox formation.

■ We find no merit to Gulf's assertion that Judge Mukasey misapplied Louisiana law. In *Tedesco*, the Louisiana Supreme Court expressly held that the doctrine of apparent authority is inapplicable to contracts involving immovable property. 540 So.2d at 964. It recognized, however, the applicability of the doctrine of agency by estoppel in transactions involving immovable property. *Id.* As explained by the court,

> "[A]gency by estoppel is based on tort principles of preventing *loss* by an innocent person. The third person not only must show reliance on the conduct of the principal, but also must show a change of position on his part that it would be unjust to allow the principal to deny the agency."

*Id.* (emphasis in original) (citing Restatement (Second) of Agency § 8, comment d (1958)).

■ Although the bankruptcy court did not have the benefit of the Louisiana Supreme Court's decision, it made findings on each of the elements of agency by estoppel. First, the bankruptcy court found that Gulf did little to determine the extent of Worden's authority and that its asserted reliance on his apparent authority was "unwarranted and unreasonable." *Manville, supra,* 89 B.R. at 368. Second, it found that Gulf did not change its position based on that reliance because the "evidence establishes that the sums were expended [by Gulf] pursuant to the other provisions of the Exploration Agreement and not merely in anticipation of drilling into the Wilcox." *Id.*

Judge Mukasey held that these findings are supported by the evidence and accordingly preclude an agency by estoppel argument. We agree. After carefully considering the entire record, we cannot say "with [a] definite and firm conviction that a mistake [was] committed," *United States*

*v. Gypsum Co.*, 333 U.S. 364, 395 (1948), with respect to these findings.

■ Under Louisiana law, "[a] third party seeking benefits from the apparent authority doctrine may not have blindly relied on the assertions of an agent. One dealing with an agent, by the mere fact of agency, is given the right and duty to determine, at his peril, whether the agency purportedly granted by the principal will permit the proposed act by the agent." *Bamber Contractors, Inc. v. Morrison Engineering and Contracting Co.*, 385 So.2d 327, 330 (La.Ct.App.1980). Gulf, however, concedes that it did little to determine the extent of Worden's authority; its reliance was based merely on Ogden's impression that, because Worden appeared competent, Worden had authority. Gulf can only point to Worden's title and managerial status as bases for manifestation of authority. Mere managerial status does not entitle third persons to assume that an employee is authorized to perform all tasks. *Pargas, Inc. v. Estate of Taylor*, 416 So.2d 1358, 1362 (La.Ct.App.1982). At no time was Worden an officer of M.F.P. Moreover, his limited grant of authority was publicly recorded in Grant Parish, Louisiana. As a result, Gulf may be charged with constructive knowledge of this limited grant of authority. *Blevins v. Manufacturers Record Publishing Co.*, 235 La. 708, 105 So.2d 392, 416 (1958); *Standard Oil Co. of New Jersey v. Evans*, 218 La. 590, 50 So.2d 203, 206 (1950); *Hollier v. Galtier*, 430 So.2d 376, 379 (La.Ct.App.1983). We agree with Judge Mukasey that the bankruptcy court's finding that Gulf's reliance on Worden's apparent authority was "unwarranted and unreasonable" is not clearly erroneous.

Moreover, we cannot say that the bankruptcy court committed clear error in finding that, with respect to the Wilcox formation, there was no change in position. Since it is certainly plausible that the money expended by Gulf was spent on the wells of the Mooringsport formation, rather than on the Wilcox, we decline to second guess the bankruptcy court's account of the evidence. *See Anderson v. Bessemer*

*City,* 470 U.S. 564, 573–74 (1985) (discussing clearly erroneous standard in the context of Fed.R.Civ.P. 52(a)).

We hold that the bankruptcy court's findings of fact regarding the elements of agency by estoppel are not clearly erroneous. Accordingly, we hold that the district court properly concluded that those findings preclude an agency by estoppel argument.

### (B)

▆▆▆▆▆ The bankruptcy court rejected Gulf's assertion that M.F.P. impliedly ratified the interlineated agreement, concluding that Louisiana law requires that ratification of a contract for immovable property entered into by an agent without authority be in writing. *Manville, supra,* 89 B.R. at 370. Thus, the court held that Gulf's argument that the interlineated agreement was impliedly ratified by M.F.P. was unavailing. It further found that, even if written ratification was not required, Gulf failed on the merits to meet its burden of establishing an implied ratification. *Id.* at 370–71. Acknowledging that there are apparently "two contradictory lines of Louisiana court decisions" bearing on the issue, Judge Muskasey found that one line of cases expressly distinguished contracts involving immovable property from those involving movable property. He found that, in contrast, the other line of cases that applied the implied ratification doctrine to immovable property did not fully consider the differences between movable and immovable property. Thus, he concluded that the first set of cases—holding that ratification of contracts for immovable property must be in writing—represents Louisiana law.

Gulf argues that the lower courts erred in holding that ratification of the interlineated agreement (and the Wilcox letter) had to be in writing. On appeal, it refers to a series of cases as authority for its position. *E.g., Burk v. Livingston Parish School Bd.,* 190 La. 504, 182 So. 656 (1938); *Rubenstein v. Files,* 146 La. 727, 84 So. 33 (1920); *Pelican Homestead & Sav. Ass'n v. Airport Mini–Warehouses, Inc.,* 531 So.2d

524 (La.Ct.App.1988). We find, however, that these cases miss the mark since they did not expressly consider the issue whether contracts involving immovable property, rather than movable property, could be ratified without a writing.

In contrast, the line of cases cited by the bankruptcy court holding that only written ratification is proper for immovable property expressly distinguishes between movable and immovable property. *Fejta v. GAF Companies, Inc.,* 800 F.2d 1395, 1396 (5 Cir.1986) (per curiam); *Tedesco v. Gentry Dev., Inc.,* 521 So.2d 717, 723–24 (La.Ct.App.1988), *aff'd on other grounds,* 540 So.2d 960 (La.1989); *Daigle & Assoc., Inc. v. Coleman,* 385 So.2d 349, 350 (La.Ct.App.1980), *aff'd on other grounds,* 396 So.2d 1270 (La.1981); *see also Daigle, supra,* 396 So.2d at 1272 (Blanche, J., concurring); *Morvant v. Arnoult,* 490 So.2d 549, 551 (La.Ct.App.1986); *Sanders v. Rudd,* 427 So.2d 1271, 1275 (La.Ct.App.1983); *Krupp v. Nelson,* 50 So.2d 464, 467–68 (La.Ct.App. 1951). In view of this authority, we are constrained to agree with the lower courts that Louisiana law requires a writing for ratification of immovable property contracts. We hold that Gulf's argument that the interlineated agreement was impliedly ratified is without merit.

▆▆▆ As a final matter, we reject Gulf's contention that the entry of the interlineated agreement in M.F.P.'s list of executory contracts filed in the bankruptcy court on February 9, 1983 constituted written ratification. The lower courts found that listing the agreement in a schedule of executory contracts is insufficient to establish a clear and absolute intent to ratify. *Bamber Contractors, supra,* 385 So.2d at 331 (intent to ratify must be clear and absolute). This finding is not clearly erroneous. The list, for instance, referred to a contract date of "October 1, 1980," which is the date of the original exploration agreement, not the date of the Wilcox letter, and is thus ambiguous as to M.F.P.'s intent. Moreover, as the bankruptcy court found, the list of executory contracts does not meet the specific requirements of an express ratification under Louisiana Civil Code Article

2272. La.Civ.Code Ann. art. 2272 (West 1973) (Compiled Edition) (current version at art. 1843). Finally, the interlineated agreement already had expired by the time the schedule of executory contracts was filed. Thus, M.F.P. could not have ratified the interlineated agreement. *Morvant, supra,* 490 So.2d at 551 ("Although a principal can subsequently ratify an act of his agent, such ratification cannot take place where ... the agreement by its very terms expired prior to the ratification.").

We hold that the lower courts properly concluded that there was no writing sufficient to establish a clear and absolute intent to ratify the interlineated agreement.

### (C)

The bankruptcy court held, and Judge Mukasey agreed, that, absent any written (or even implied) ratification as well as any express (or even apparent) authority on the part of Worden, the interlineated agreement is not enforceable by Gulf. *Manville, supra,* 89 B.R. at 372. Accordingly, the bankruptcy court expunged Gulf's proof of claim in its entirety. *Id.* It further held that, even if the interlineated agreement (and the Wilcox letter) was enforceable, under either a ratification or estoppel theory, M.F.P. did not breach its terms by leasing the Wilcox formation to Hogan. *Id.*

Since we have held that the lower courts correctly concluded that the interlineated agreement (and the Wilcox letter) is not enforceable by Gulf, we hold that the bankruptcy court correctly expunged Gulf's proof of claim. Accordingly, we find it neither necessary nor appropriate to reach the issues whether M.F.P. breached the terms of the interlineated agreement or whether Gulf properly could assert the claims of its working interest partners.

### VI.

To summarize:

We hold that the adversary proceeding, which involves the determination of an objection to a proof of claim filed in the bankruptcy case, constituted a core proceeding within the meaning of 28 U.S.C. § 157(b), and that Judge Sprizzo properly denied Gulf's motion to withdraw the reference to the bankruptcy court. We also hold that Judge Sprizzo did not abuse his discretion in denying Gulf's motion to transfer venue.

With respect to Gulf's breach of contract claim, we hold that the lower courts correctly determined that Louisiana law does not recognize the applicability of the doctrine of apparent authority to contracts involving immovable property. We also hold that the lower courts did not clearly err in finding that Gulf did not establish an agency by estoppel. We further hold that the lower courts correctly determined that Louisiana law requires that ratification of contracts involving immovable property be in writing, and that they did not clearly err in finding no writing sufficient to establish a clear and absolute intent to ratify. Accordingly, we hold that the bankruptcy court correctly expunged Gulf's proof of claim filed in the bankruptcy case.

Affirmed.