08-2964-bk
Pension Benefit Guaranty Corp. v. Oneida, Ltd.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

------------

August Term, 2008

(Argued: January 29, 2009          Decided: April 8, 2009)

Docket No. 08-2964-bk

- - - - - - - - - - - - - - - - - - - - - - - X

PENSION BENEFIT GUARANTY CORPORATION,

                Defendant-Appellant,

        - against -

ONEIDA LTD.,

                Plaintiff-Appellee.

- - - - - - - - - - - - - - - - - - - - - - - X

Before:    POOLER and LIVINGSTON, Circuit Judges, and
           RAKOFF, District Judge.[*]

        Direct appeal pursuant to 28 U.S.C. § 158(d)(2) from an Order of the United States Bankruptcy Court, Southern District of New York (Allan L. Gropper, United States Bankruptcy Judge), holding that payments due the Pension Benefit Guaranty Corporation as a result of an employer's termination of a pension plan while undergoing reorganization in bankruptcy are contingent pre-petition claims dischargeable in bankruptcy.  Concluding that the payment obligation does not arise in any respect until after bankruptcy, we REVERSE and REMAND for further proceedings.

                        JAMES L. EGGEMAN, Assistant Chief Counsel,
                            Pension Benefit Guaranty Corp.,
                            Washington, D.C. (Israel Goldowitz,
                            Chief Counsel, Karen L. Morris, Dep.
                            Chief Counsel, Paula J. Connelly, Asst.

---

[*]The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

Chief Counsel, Lawrence F. Landgraff, Erika E. Barnes, Pension Benefit Guaranty Corp., Greg R. Yates, Charles G. Cole, Steptoe & Johnson LLP, New York, New York, on the briefs), for Defendant-Appellant.

WILLIAM J.F. ROLL, III, Shearman & Sterling LLP, New York, New York (Jaculin Aaron, Michael H. Torkin, Daniel C. Lewis, Shearman & Sterling LLP, on the brief), for Plaintiff-Appellee.

RAKOFF, District Judge.

The Pension Benefit Guaranty Corporation ("PBGC") appeals from a judgment of the Bankruptcy Court, Southern District of New York (Allan L. Gropper, B.J.), which held that "Termination Premiums" created by the Deficit Reduction Act of 2005, Pub. L. 109-171, 120 Stat. 4 (2006), are pre-petition contingent claims dischargeable in bankruptcy.[1]  On May 12, 2008, the parties jointly petitioned for permission to appeal directly from the bankruptcy court pursuant to 28 U.S.C. § 158(d)(2), which grants jurisdiction to the court to hear such an appeal when the question presented "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance."  On August 29, 2008, the Court

---

[1] The provision of the Deficit Reduction Act creating the Termination Premiums amended the relevant provision of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1306.  The provision was later permanently enacted as part of the Pension Protection Act of 2006, Pub. L. 109-280, 120 Stat. 780.

-2-

granted the joint petition, see Pension Benefit Guar. Corp. v. Oneida, Ltd., No. 08-2964-bk (2d Cir. Aug. 29, 2008), and the matter was subsequently briefed and argued. We now reverse.

The PBGC is essentially an insurer of pension funds. "Termination Premiums" paid to the PBGC are designed to help insure employees against the non-payment of pension benefits if the employer terminates a covered fund under specified circumstances. The "General Rule" is that

> [i]f there is a termination of a single-employer plan [under specified provisions], there shall be payable to the [PBGC], with respect to each applicable 12-month period, a premium at a rate equal to $1,250 multiplied by the number of individuals who were participants in the plan immediately before the termination date.

29 U.S.C. § 1306(a)(7)(A). If, however, the plan is terminated during a bankruptcy reorganization proceeding, then

> [the General Rule] shall not apply to such plan until the date of the discharge or dismissal of [the employer] in such case.

Id. § 1306(a)(7)(B). This is called the "Special Rule."

Under the General Rule, the "applicable 12-month period" runs from the "first month following the month in which the termination date occurs" and requires payment for a total of

-3-

three years.  Under the Special Rule, the applicable 12-month period does not commence until "the first month following the month which includes the earliest date as of which each [employer] is discharged or dismissed" from the bankruptcy proceeding.  Id. § 1306(a)(7)(C).  It is thus apparent from the face of the relevant statutory provisions that "[i]n the case of termination due to reorganization, the liability for the [termination] premium does not arise until the employer is discharged from the reorganization proceeding."  Staff of Joint Comm. on Taxation, 109th Cong. Technical Explanation of H.R. 4, the "Pension Protection Act of 2006," as Passed by the House on July 28, 2006, and as Considered by the Senate on August 3, 2006 (emphasis added).

On March 19, 2006, Oneida, a designer and manufacturer of flatware, filed for Chapter 11 reorganization in bankruptcy.  See Oneida Ltd. v. Pension Benefit Guar. Corp. (In re Oneida), 383 B.R. 29, 33 (Bankr. S.D.N.Y. 2008).  While in bankruptcy, Oneida terminated one of its single-employer, defined-benefit pension plans, the Oneida Plan, pursuant to a stipulation by the instant parties preserving their respective rights to dispute or enforce payment of Termination Premiums.  Pension Settlement Agreement ¶ 5 (May 3, 2006).  Oneida then sought a declaratory judgment that the applicable Termination Premium was an unsecured, pre-petition bankruptcy claim under § 101(5) of the Bankruptcy Code.  The

-4-

parties cross-moved for summary judgment and the bankruptcy court issued an opinion on February 27, 2008, and an Amended Order on the Motions for Summary Judgment dated March 21, 2008, from which the PBGC now appeals. With no findings of fact in question, we review the bankruptcy court's conclusions of law de novo. See Shugrue v. Air Line Pilots Ass'n. Int'l, (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 988 (2d Cir. 1990); Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.), 896 F.2d 1384, 1388 (2d Cir. 1990).

The bankruptcy court believed that the Termination Premiums were dischargeable pre-petition claims because of the broad definition accorded the term "claim" in the bankruptcy context. Specifically, the Bankruptcy Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). "Congress unquestionably expected this definition to have wide scope." United States v. LTV Corp. (In re Chateaugay Corp.), 944 F.2d 997, 1003 (2d Cir. 1991).

At the same time, however, the definition's reach is "not infinite." LTV Steel Co. v. Shalala (In re Chateaugay Corp.), 53 F.3d 478, 497 (2d Cir. 1995). Rather, "the existence of a valid bankruptcy claim depends on (1) whether the claimant possessed a right to payment, and (2) whether that right arose before the

filing of the petition." Id. at 497; see also In re Duplan Corp., 212 F.3d 144, 151 (2d Cir. 2000). To make these determinations, we look to the substantive non-bankruptcy law that gives rise to the debtor's obligation. See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 450 (2007) (noting that "creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation" (internal quotations omitted) (quoting Raleigh v. Ill. Dept. of Revenue, 530 U.S. 15, 20 (2000))).

Here, the substantive, non-bankruptcy law giving rise to Oneida's obligation to pay a Termination Premium is the Special Rule, which unambiguously states that where a pension plan is terminated in connection with an employer's bankruptcy reorganization, the General Rule – which creates the PBGC's right to a Termination Premium – "shall not apply to such plan until the date of the discharge or dismissal of [the employer]." 29 U.S.C. § 1306(a)(7)(B). The obvious purpose of this rule is to prevent employers from evading the Termination Premium while seeking reorganization in bankruptcy. Although in the context of a private contract, this language might not control the question of whether a "claim" existed, Congress may prescribe when a claim will be legally effective for the purposes of the Bankruptcy Code, at least where, as here, the non-bankruptcy statute explicitly discusses how the obligation should be treated in

bankruptcy.

This, then, is not a situation, as the bankruptcy court erroneously thought, where an obligation has already been created prior to bankruptcy but is subject to a contingency. See In re Oneida, 383 B.R. at 38-39. Rather, an employer's obligation to pay a Termination Premium on a pension plan that is terminated during the course of the bankruptcy does not even arise until the bankruptcy itself is terminated. No matter how broadly the term "claim" is construed, it cannot extend to a right to payment that does not yet exist under federal law.

If there is any ambiguity in the statutory language of the Special Rule – and we perceive none – it is resolved in the PBGC's favor by the legislative history of the Deficit Reduction Act and the Pension Protection Act. The Termination Premiums were established in response to mounting financial pressure on the PBGC as a result of an increasing number of pension plan terminations. See H.R. Rep. 109-276, at 345-48 (2005).[2] Congress recognized, however, that its Termination Premium program could be jeopardized by employers seeking bankruptcy

---

[2] The 109th Congress considered the Termination Premiums in two budget reconciliation bills, H.R. 4241, 109th Cong. (2005) and S. 1932, 109th Cong. (2005), and two pension reform bills, H.R. 2830 (Pension Protection Act of 2005), 109th Cong. (2005), (which was the predecessor to the bill passed in 2006), and S. 1783 (Pension Security and Transparency Act), 109th Cong. (2005), (which was later reconciled with H.R. 2830 to include termination premiums).

protection. It thus created the Special Rule. The House Committee on Education and the Workforce stated:

> [T]he Committee believes that a termination premium for former plan sponsors who initiate and complete a distress termination while in bankruptcy is appropriate. The bankruptcy courts should not be used as a mechanism for eliminating the burden of an underfunded pension plan; therefore, an additional premium paid to the PBGC to recognize the agency's assumption of unfunded plan liabilities is reasonable.

H.R. Rep. No. 109-276, at 348. Treating the Special Rule's Termination Premium as a pre-petition claim would therefore directly thwart Congress's aim in establishing the Special Rule.

For the foregoing reasons, the decision of the bankruptcy court is hereby reversed and the case is remanded for further proceedings consistent with this ruling.