# In re WEATHERLY FROZEN FOOD GROUP, INC. dba Vroman Foods, Debtor.

### Bankruptcy No. 91–32375.

United States Bankruptcy Court, N.D. Ohio, W.D.

Aug. 7, 1991.

Barry E. Savage, Joseph Jordan, Toledo, Ohio, for Pet. creditors.

John P. Gustafson, Toledo, Ohio, for Pro-Pak Industries.

Gordon H. Hirsch, Toledo, Ohio, for Superior Dairy.

John Landry, Toledo, Ohio, for Virginia Dare Extract Co.

Donna M. Weaver, Toledo, Ohio, Charles Simpson, New York City, for debtor.

Thomas Illstrup, Toledo, Ohio, for Toledo Edison.

## OPINION AND ORDER DENYING MOTION FOR TRANSFER OF VENUE AND CONSOLIDATING CHAPTER 11 CASE WITH INVOLUNTARY PETITION

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter came on for hearing upon Weatherly Frozen Food Group's motion to dismiss involuntary petition, amended to be styled as motion for transfer of venue and for consolidation, to which the petitioning creditors have responded. Upon consideration of the evidence adduced at the hearing, the court finds that said motion is not well taken and that the voluntary petition filed in the United States Bankruptcy Court for the Southern District of New York should be consolidated with the involuntary petition previously filed in this court.

### FACTS

On June 14, 1991, an involuntary petition under chapter 7 of title 11 was filed against Weatherly Frozen Food Group, Inc. (hereinafter Debtor). Subsequently, on June 27, 1991, Debtor filed a voluntary petition under chapter 11 of title 11 in the United States Bankruptcy Court for the Southern District of New York. On July 8, 1991, Debtor filed a motion to dismiss involuntary petition for the reasons that it is defective as it was not commenced in the district of the principal place of Debtor's business, that approximately $5,000,000 of Debtor's total $27,000,000 of assets are located in Ohio, that Debtor's directors, officers, stockholders, attorneys, accountants and books of record are located in or near New York, and that in excess of Debtor's $23,000,000 secured debt is due banks located on the East Coast. Several creditors have filed statements, in support of Debtor's motion, claiming that New York would be a more convenient forum for administration of this case. These creditors include: Simkins Industries, Inc. claiming a debt

owed it in the amount of $296,330.23; Seal-right Co., Inc. claiming a debt owed it in the amount of $102,421.05; Bemid, Inc. claiming a debt owed it in the amount of $180,504.27; Professional Marketers, Inc. claiming a debt owed it in the amount of $46,053.43; General Mills claiming a debt owed it in the amount of $1,060,000; W.B. Doner and Company claiming a debt owed it in the amount of $2,600,000; Steve's Homemade Ice Cream, Inc. (hereinafter Steve's) claiming a debt owed it in the amount of $121,290.40; and MNC Credit Corp. and Fleet Credit Corp. claiming a debt owed them in the amount of $16,000,-000 as a result of a line of credit secured by continuing liens on substantially all of Debtor's assets.

The petitioning creditors in response, state that Debtor is a Delaware corporation, qualified to do business in the state of Ohio, recognizing Toledo, Ohio as its principal place of business for purposes of the application filed with the Ohio secretary of state. These creditors contend that Debtor is not authorized to conduct business in New York and that Ohio will be a more convenient forum as Debtor's assets include the production facility in Toledo, Ohio. Additionally, Debtor owns an Ohio corporation, Toledo Frigid Lines, Inc., which is engaged in the transportation of the product with ICC permits. The company base point for Toledo Frigid Lines is Toledo, Ohio. The tangible assets of Toledo Frigid Lines consist of some 14 trailers and interstate authorizations. According to Debtor's president, it is Debtor's intention to sell the tangible assets located in Ohio to Country Fresh, a Michigan corporation, and the intangibles, consisting of licensing agreements concerning trademarks and tradenames owned by General Mills, to Steve's. Debtor has approximately 110 employees, none of which are employed in New York.

Mr. Michael Recca, president, chief executive officer, chief financial officer and chief operating officer testified on behalf of Debtor corporation. He stated that he is not paid by Debtor; rather, he is employed by Weatherly Private Capital Corp., which is an investment banking firm that acquires other businesses in an effort to ensure the survival and prosperity of its shareholders. Mr. Recca's office is in New York, New York. The other shareholders are: Thomas McFalls, a resident of New York, Edward Arnold, a resident of Pennsylvania and Thomas Dixcy, a resident of Connecticut.

Mr. Recca explained that the marketing and distributing operations of Debtor corporation were, previously, conducted through its St. Petersburg, Florida office; however, as of the fall, 1990, Mr. Recca has been in charge of Debtor's operations. The Florida office will be closed in the near future, according to Mr. Recca's testimony. Although Mr. Recca testified that Debtor is authorized to conduct business in Ohio and Florida, he was not sure whether Debtor was authorized to conduct business in New York. On a daily operational basis, Mr. Recca approves disbursements and authorizes payments to be made from the Ohio office. That is, funds are wired to an account in Ohio, checks are written on these funds and after honoring of these checks, the balance is zero. The Ohio plant works with Steve's, a company engaged in marketing and distributing ice cream and dessert items, in arranging a production schedule; however, Mr. Recca reviews the proposal.

Mr. Recca stated that in preparing the voluntary petition filed in New York, certain documents, including trade payables, were forwarded to New York from Florida and Ohio. *See* Movant's Exhibit B. These payables approximate $8,000,000. He now believes the schedules submitted to the New York court contain inaccuracies. Mr. Recca explained that the voluntary petition filed in New York representing that Debtor has resided, been domiciled and had its principal place of business within New York references the decision making situs of Debtor. Additionally, Debtor's most valuable assets, its intangibles, including licenses and trademarks, are located in New York. However, Mr. Recca admitted that no bank accounts are maintained in New York and no employees reside in New York. Additionally, although Debtor has

been sued in Ohio and Florida, Mr. Recca was aware of no lawsuits filed against Debtor in New York.

Mr. Gary Stevens, employed as president of Steve's, testified that his principal office is in New York. Mr. Stevens explained that he became involved with Debtor after the Ohio production facility's closing in December, 1990. He, thereafter, approached Mr. Recca indicating that Steve's would be interested in marketing Debtor's product. As a result of the Ohio facility's reopening, Steve's dictates the production schedule and discusses with the Ohio office, two or three times a week, the inventory levels and other production information. Steve's arrangement with Debtor, as explained by Mr. Stevens, is a "term sheet" reflecting Steve's requested production level. Steve's also arranges the transportation of product out of the Ohio facility. Steve's, according to Mr. Stevens' testimony, is considering buying a portion of Debtor's business, specifically, the intangibles, and has been discussing this opportunity since January, 1991, which terms include input of $1,000,-000 in equity, subordination of some debt and assuming some secured debt. Additionally, in order to preserve Debtor's customer base, Mr. Stevens stated that Steve's has satisfied some outstanding obligations of Debtor, for which it will seek payment.

## DISCUSSION

■ Debtor's counsel stipulated, at the hearing, that this court is the proper forum in which to determine the venue issue as provided by Bankruptcy Rule 1014. Debtor's counsel also stated that venue may be proper both in the New York and this court. Thus, this court is asked to consider a change of venue, pursuant to 28 U.S.C. § 1412 which provides that a case may be transferred "in the interest of justice or for the convenience of the parties." The parties agree that the factors for the court's consideration include:

1) the proximity of creditors of every kind to the court;

2) the proximity of the (Debtor) to the court;

3) the proximity of the witnesses necessary to the administration of the estate;

4) the location of the assets;

5) the economic administration of the estate;

6) the necessity for ancillary administration if bankruptcy should result.

*Matter of Commonwealth Oil Refining Co., Inc.,* 596 F.2d 1239, 1247 (5th Cir. 1979), *cert. denied* 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980); Response to Further Amendment to Motion to Dismiss Involuntary Petition to be Styled as Motion for Transfer of Venue and for Consolidation and Brief in Support of Motion at 9; Further Amendment to Motion to Dismiss Involuntary Petition to be Styled as Motion for Transfer of Venue and for Consolidation and Brief in Support of Motion at 11–12.

Debtor introduced the voluntary petition filed in the New York court at the hearing. *See* Debtor's Exhibit A. Debtor's counsel represented, at the hearing, that Debtor has some 950 creditors. Although Mr. Recca testified that Debtor's voluntary petition contains inaccuracies, upon review of the list of creditors holding 20 largest unsecured claims, the court finds that eight of these twenty creditors reflect addresses within Ohio. The court finds this factor significant in weighing the convenience of the parties. *See In re FRG, Inc.,* 107 B.R. 461, 471 (Bkrtcy.S.D.N.Y.1989) (fourteen of the twenty largest unsecured creditors reside in Pennsylvania).

Additionally, the major assets, the real property, its fixtures and Toledo Frigid Lines, are located in Toledo, Ohio. *See In re Greenhaven Associates, Ltd.,* 93 B.R. 35, 40 (Bkrtcy.S.D.N.Y.1988) (finally, the factor which overwhelmingly militates in favor of transfer was that substantially all of its assets are located in Ohio (citation omitted)). Although Mr. Recca operates the business from his office in New York, Debtor's production occurs in Ohio.

In short, the decision on this factor is to opt for venue where the witnesses necessary to the operation are located, and where the records and their customers

are located, rather than where its part time executive resides. He is readily available to travel to appear in California and the inconvenience is less as to him than as to the creditors.

*In re Pope Vineyards,* 90 B.R. 252, 258 (Bkrtcy.S.D.Tex.1988). That is, Mr. Recca stated that the employees at the Ohio facility determine which employees to hire for operation of which machines that are necessary for production. As previously stated, Debtor currently employs in excess of 100 people at the Toledo plant. *See supra* p. 864.

Furthermore, a central issue to Debtor's reorganization, upon consolidation of its New York case with the instant involuntary, is certain to revolve around the real estate value. *See In re Pavilion Place Associates,* 88 B.R. 32, 36 (Bkrtcy. S.D.N.Y.1988). Witnesses necessary for production schedules and valuation of Debtor's physical assets are within Ohio. In this court's opinion, economic administration of this case would not be advanced by transferring this case to New York as the appraisers and auctioneers necessary for sale, as contemplated, of the real estate should be familiar with the Ohio market. Also, any property laws necessary for sale of that real estate would be determined by reference to Ohio state law. That is, the collateral for disputed claims which may result in litigation, is located in Ohio. *Matter of Ocean Properties of Delaware, Inc.,* 95 B.R. 304, 306 (Bkrtcy.D.Del.1988). Also, as stated, Mr. Recca anticipates sale of the real estate and intangibles, thus, envisioning a liquidating chapter 11. After liquidation, then, there will be no business necessary for Mr. Recca to operate.

▪ Lastly, regarding Debtor's real estate, real property issues are of local concern. *See Pavilion Place Associates,* 88 B.R. at 36 (improved real estate is a peculiarly local concern often better administered by a court in the district in which it is located). *See also Pope Vineyards,* 90 B.R. at 258 (special consideration should be given to the situs of the assets where those assets consist of real property). Although Mr. Recca states that Debtor's most valu-

able assets are the intangibles and that same are located in New York, these intangibles are transportable and may easily be removed to Ohio, if necessary. Also, Mr. Stevens testified that Steve's pays royalties, under these intangible licenses, direct to General Mills, the owners of the licenses, at its office in Minnesota. Thus, the location of the intangibles is not important for sale of these assets. Sale of the real estate, which is currently being negotiated according to Mr. Recca, may be to a Michigan corporation, Country Fresh. Appraisers and possible auctioneers, or real estate brokers, from this area will be necessary for accomplishing such a sale. The court finds this factor, alone, sufficient for denial of Debtor's motion. *Id.* (in virtually every single asset improved real estate partnership case which we have seen, the court has transferred the bankruptcy to the jurisdiction where the assets are located). The court finds Debtor's motion for change of venue not well taken.

Mr. Recca has been operating the business of Debtor since the fall of 1990, by utilizing facsimile machines in transmitting information between Ohio and New York. There appears no reason why this arrangement may not continue and, as previously stated, this arrangement will not continue indefinitely due to Debtor's anticipated sale of the assets. Debtor's president may be inconvenienced, but he has previously performed his duties from his New York location. *Ocean Properties,* 95 B.R. at 306. *See also Pavilion Place,* 88 B.R. at 36 (although the books are in New York, the budgets and projections necessary to operations are always transmitted to Minnesota); *Greenhaven Associates,* 93 B.R. at 40 (interests of all creditors other than Debtor's management would be better served by transferring this case to the jurisdiction where all of Debtor's assets were located and where all of Debtor's income was generated (citations omitted)).

▪ Finally, adjudication of a motion for change of venue is within the court's discretion. *In re Manville Forest Products Corp.,* 896 F.2d 1384, 1391 (2nd Cir. 1990) (motions for transfer are within the

discretionary authority of the court according to an individualized case-by-case consideration of convenience and fairness (citations omitted)); *In re Garden Manor Associates, L.P.,* 99 B.R. 551, 553, 19 B.C.D. 521 (Bkrtcy.S.D.N.Y.1988). The decision to transfer should be exercised cautiously where a case is commenced in the proper venue. *Pope Vineyards,* 90 B.R. at 255. Debtor must carry its burden to change venue by a preponderance of the evidence. *Id. See also In re Manville Forest Products,* 896 F.2d at 1390 (party moving for change of venue bears burden of proof by preponderance of the evidence). Debtor has failed to carry this burden as the court finds that the involuntary petition is properly venued and should be permitted to continue.

Although Debtor argues that New York is the most appropriate venue as it is the place where all major business decisions are made, the court, in its discretion, is not convinced by this analysis. As stated, Mr. Recca has operated the business from his New York office since the fall of 1990. This method of operation may continue. Additionally, Mr. Recca could not verify whether Debtor is authorized to do business in New York; Debtor is authorized to do business in Ohio. *See supra* p. 864. The petitioning creditors filed the involuntary petition with this court which represents a proper venue. Furthermore, Mr. Recca explained that in completing the voluntary petition filed in New York, it was necessary to obtain the books and records from the offices in Ohio and Florida. The Florida office is soon to be closed. *See supra* p. 864. Lastly, Debtor has obtained local, competent counsel who adequately represented it at the hearing. This court, then, has an interest in adjudicating the involuntary petition and presiding over administration of Debtor's chapter 11 case. The court finds that movant has failed to carry its burden in demonstrating that the interest of justice or convenience of the parties would be furthered by transfer of this case.

Having found a change of venue inappropriate for this case, the court finds that the instant involuntary petition should be consolidated with Debtor's chapter 11 petition filed with the New York court. It is therefore

ORDERED that motion of Debtor for change and/or transfer of venue be, and it hereby is, denied. It is further

ORDERED that the Clerk of the United States Bankruptcy Court, Southern District of New York, transfer Debtor's voluntary chapter 11 case now pending before the United States Bankruptcy Court for the Southern District of New York, captioned *In re Weatherly Frozen Food Group, Inc., d/b/a Vroman Foods,* Case No. 91-B-12915, to the United States Bankruptcy Court, Northern District of Ohio, Western Division. It is further

ORDERED that Debtor's chapter 11 case filed in the Southern District of New York, being case number 91-B-12915 be, and it hereby is, consolidated with the instant case.