**In re VIENNA PARK PROPERTIES, a Limited Partnership, Debtor.**

**No. 89–B–12967 (CB).**

United States Bankruptcy Court, S.D. New York.

June 25, 1991.

## DECISION ON REMANDED MOTION TO TRANSFER VENUE

CORNELIUS BLACKSHEAR,
Bankruptcy Judge.

This matter was remanded to this Court by the District Court for the Southern District of New York after an appeal by Trust Bank Savings, F.S.B. ("Trustbank") and United Postal Savings Association ("United Postal") (collectively, the "Secured Creditors") from a certain portion of an Order signed by this Court on November 6, 1990 (the "Order") denying the Secured Creditors' motion to transfer venue to the Eastern District of Virginia. The District Court, in a decision dated March 11, 1991 (Ward, S.D.N.Y) (the "District Court Decision"), vacated that part of the Order which was the subject of the appeal and remanded the matter to this Court for reconsideration in light of certain issues and concerns raised on appeal.

## BACKGROUND

On November 22, 1989, Vienna Park Properties (the "Debtor"), a partnership, filed a voluntary bankruptcy petition, pursuant to chapter 11 of the Bankruptcy Code (the "Code"), in the bankruptcy court sitting in this district. The single asset in this case is a 300–unit apartment complex located in Vienna, Virginia.

On January 10, 1990, the Secured Creditors filed a motion before this Court seeking a transfer of venue of the bankruptcy case to the Eastern District of Virginia based on either (1) a finding of improper venue under 28 U.S.C. § 1408, or alternatively, (2) a finding that such a transfer is warranted in the interests of justice and for the convenience of the parties under 28 U.S.C. § 1412 and Bankruptcy Rule 1014(a)(1).

After an evidentiary hearing, consuming several volumes of transcript, this Court issued a decision on October 23, 1990 (the "Decision") denying the Secured Creditors' motion to transfer venue based on a finding that venue was proper in the Southern District of New York and that the interest of justice and convenience of the parties

Stroock & Stroock & Lavan by Robert Lewin, New York City, for Trust Bank Sav., FSB and United Postal Sav. Ass'n.

Glass & Eckstein, P.C. by James D. Glass, Andrew B. Eckstein, New York City, for debtor.

test ultimately dictated that the bankruptcy case remain in this district.[1] On November 2, 1990, this Court signed the Order embodying the holding in the Decision. The Secured Creditors appealed the Order to the extent that it related to this Court's finding that the interests of justice and convenience of the parties would best be served by maintaining venue in this district.

The District Court vacated the portion of the Order which denied the Secured Creditors' motion to transfer venue based on the interests of justice and for the convenience of the parties and remanded the matter to this Court for reconsideration in light of certain issues and concerns raised on appeal.[2]

The facts surrounding the financing, purchase and operation of the apartment complex, having not been challenged by the District Court, are fully detailed in the Decision and therefore will not be recited herein except where relevant.

This Court made a finding in the Decision that the principal place of business of the Debtor, a partnership, is located in New York and therefore that venue is proper in this district under 28 U.S.C. § 1408. *Vienna Park I,* 120 B.R. at 329. The Secured Creditors did not challenge this aspect of the Decision and therefore it was not the subject of the District Court's review on appeal.

Next, this Court addressed transfer of venue based on the interest of justice or the convenience of the parties under section 1412 of Title 28 of the United States Code. This Court applied the factors set forth in *Commonwealth v. Commonwealth Oil Refining Co., Inc.,* 596 F.2d 1239, 1247 (5th Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980) (the "CORCO Factors")[3], which both parties cite as the legal standard, and made

certain findings. *Vienna Park I,* 120 B.R. at 329–30. This Court held that the proximity of all creditors to the court worked in favor of transfer of venue to Virginia. *Id.* The Debtor does not have any creditors in New York. In fact all of the known unsecured creditors are either in Virginia or the general area. Moreover, four of the Debtor's five secured creditors are also either in Virginia or in the neighboring area. The fifth secured creditor, although located in Missouri, joined in the motion to transfer venue.

This Court held that the proximity of the witnesses also weighed in favor of a transfer of venue to Virginia. *Id.* The acrimonious relationship between the parties strongly suggested much litigation in this case and this Court found that most of the witnesses likely to testify are located in the Virginia area. This Court also held that the proximity of the Debtor to the court and the location of the Debtor's assets did not weigh either in favor of transfer of venue or against it. *Id.* at 331. In the unlikely event of a liquidation, however, this Court found that the bankruptcy court in Virginia would indeed be the better forum to conduct such a liquidation. *Id.* at 331.

This Court next considered the economic administration of the estate factor and in doing so recognized the importance placed on this factor by other courts. *Id.* at 331. This Court then proceeded to make several other observations that weighed in favor of transfer of venue. First, this Court anticipated extensive litigation between the parties which would raise issues involving Virginia law which are truly matters of a local concern. *Id.* Second, the burden placed on the general partners of the Debtor, who are located in the New York area, to attend court hearings and creditors' meetings in Virginia, while surely inconvenient, was not found to be so burdensome and onerous

---

**1.** *In re Vienna Park Properties ("Vienna Park I"),* 120 B.R. 320 (Bankr.S.D.N.Y.1990).

**2.** *In re Vienna Park Properties ("Vienna Park II"),* 125 B.R. 84 (S.D.N.Y.1991).

**3.** The CORCO Factors are: (1) the proximity of all creditors to the court; (2) the proximity of

the debtor to the court; (3) the proximity of witnesses necessary to the administration of the estate; (4) the location of the assets; (5) the economic administration of the estate; and (6) the necessity for ancillary administration in the event of liquidation.

as to jeopardize or thwart the general partner's role in the reorganization process. *Id.*

Finally, this Court noted that while the above considerations would have dictated that venue be transferred to Virginia, this Court made one last observation:

> Normally, the analysis would end here and the case would be transferred to Virginia. However, this court finds that another factor must be considered under the "efficient administration of the case" factor. This Court has decided numerous issues and matters in this case and finds that its imprint on this case is so pervasive that transfer to another bankruptcy judge would not be in keeping with judicial economy. This is especially true because of my opinion, rendered *sua sponte* and signed and decided simultaneously with this decision, reversing an earlier decision. A bankruptcy judge should not be placed in a position of overruling a decision of another bankruptcy judge. If the case is to be overruled, the proper appellate procedure should be followed.

*Vienna Park I*, 120 B.R. at 332. It is this language which the Secured Creditors urge as reversible error and which the District Court raised concerns with.

## DISCUSSION

■ Since determinations of venue motions are left to the discretion of the trial court, *In re Manville Forest Products Corp.*, 896 F.2d 1384, 1390–91 (2d Cir.1990), on appeal the trial court's findings of fact may not be set aside by an appellate court unless clearly erroneous. Bankr. Rule 8013. The trial court's conclusions of law, however, are subject to *de novo* review by the appellate court. *In re Tesmetges*, 47 B.R. 385, 388 (E.D.N.Y.1984); *In re O.P.M. Leasing Services, Inc.*, 79 B.R. 161, 162 (S.D.N.Y.1987); *In re Chateaugay Corp.*, 104 B.R. 637 (S.D.N.Y.1989).

■ On appeal, the Secured Creditors urged that this Court's last observation of its "imprint" on the case, which ultimately caused this Court to deny the venue motion, was nothing more than an attempt to avoid reversal with respect to a recent decision relating to whether certain rents constituted cash collateral under Virginia law.

The Debtor, while in support of this Court's determination to deny a transfer of venue, challenges certain aspects of this Court's analysis of the CORCO factors. Specifically, the Debtor challenges the final conclusion that this Court's "imprint" on the case is the only issue weighing against transfer of venue. The Debtor argues that certain CORCO factors which this Court found to be in support of a transfer of venue actually support the opposite conclusion in the Decision, i.e., a denial of transfer of venue. Despite the Debtor's challenge, this Court adheres to its findings and conclusions. Accordingly this Court will endeavor to clarify its reasoning set forth in the Decision.

The District Court recognized that the time and effort expended by a court are appropriate factors in determining the venue in which the estate may be most efficiently and economically administered. *See, Vienna Park II*, 125 B.R. at 87, citing *In re Manville Forest Products Corp.*, 896 F.2d 1384, 1391 (2d Cir.1990). The District Court concluded that this Court did not err as a matter of law to the extent that this Court included its "imprint" in its analysis. *Id.* The District Court, however, suggests that this Court's motives in refusing to transfer venue were colored by a desire to avoid reversal or conflicting decisions in another district. *Id.* Indeed, the District Court states in a footnote that it would have been better had this Court "chosen a word other than 'imprint' to express this factor, thereby more clearly expressing the rationale of efficiency and familiarity with the case rather than desire to avoid contrary rulings in another district." *Id.* n. 3. In its final analysis, the District Court found this Court's reasoning "somewhat ambiguous" as to the weight, if any, this Court attached to the possibility of reversal by a Virginia Court. *Id.* at 88.

This Court finds it extremely disconcerting that both the Secured Creditors would allege, and the District Court would intimate, that this Court was guided by im-

proper motives in reaching its final conclusions in the Decision. The appellate process serves to protect the rights of parties who have a bona fide disagreement and dissatisfaction with the factual and/or legal conclusions of either a trial court or an appellate court. This Court does not fear a reversal upon appeal. To the contrary, this Court welcomes parties to exercise their constitutional rights to take appeals to ensure that justice, due process and equity have been provided.

The possibility that a transfer of venue of this case would somehow result in a reversal of a recent decision on cash collateral by the newly assigned bankruptcy court did not enter into this Court's decision to maintain venue in this district. Doing so would have not only been improper but also incorrect. If a reversal of this Court's decisions is warranted it will emanate from a district court sitting either in this district or in the Eastern District of Virginia pursuant to an appeal. In fact, both the venue and cash collateral decisions were appealed to the district court in this district.[4] Instead, the concerns of this Court went to its level of involvement in this case. This bankruptcy case has demanded constant court attention and involvement since its commencement; more so than many other chapter 11 case pending before this Court for an equal period of time. At the time of the issuance of the Decision, this Court had been intimately familiar with the Debtor's reorganization efforts.[5] Such involvement included resolution of the cash collateral dispute, a rather complicated issue, and the approval of the Debtor's attempt to make certain capital improvements on the subject property. With each additional hearing conducted,

this Court gained a further understanding of the Debtor's operations as well as the problems the Debtor has had to resolve.

As a result this Court has gained such a familiarity with, and insight into, this case, that a transfer of venue would only thwart the efficient administration of the case and work an injustice in the case and to all parties involved. In *In re Manville Forest Products Corp.*, the Court of Appeals for the Second Circuit upheld bankruptcy judge Lifland's decision denying a transfer of venue of an adversary proceeding based on what was referred to as the "learning curve" developed by the bankruptcy court. 896 F.2d at 1391. The court in *Manville* recognized that "[t]he 'interest of justice' component of § 1412 is a broad and flexible standard which must be applied on a case-by-case basis." *Id.* Like the court in *Manville*, this Court found that its progress on the "learning curve" it had created as of the issuance of the Decision was too far advanced to allow a transfer of the case to another court. Nonetheless, the Secured Creditors seek to distinguish *Manville* because in that case the creditor moved to transfer venue almost three years after the debtor filed its petition. Indeed, the Court of Appeals' affirmance was based in part upon Judge Sprizzo's conclusion that the creditor's motion was untimely. *Id.* at 1391. In the matter, *sub judice*, there is no issue as to timeliness since the Secured Creditors made their motion approximately six weeks after the petition was filed. However, notwithstanding the issue of timeliness, this Court's involvement commenced early in this case and was rather substantial at the time the Decision was rendered. As noted above, this case has required more court involvement than

---

**4.** The appeal of the decision on cash collateral is currently pending in the district court.

**5.** Pursuant to the District Court's directive, this Court will not include in its revisit of the Decision events that have occurred subsequent to the Decision and during the pendency of the appeal. However it is interesting to note that during that time period this Court's involvement has continued to escalate tremendously. The list of matters brought to this Court's attention includes a decision on the Debtor's motion for summary judgment as to the entitlement of certain excess funds in an escrow account, a pending motion by the Secured Creditors seeking modification of the automatic stay under section 362 of the Code and the Debtor's motion seeking a determination of the value of the Condominiums and to the extent to which the secured creditors are secured thereby pursuant to section 506(a) of the Code (the "Valuation Motion"). The trial on the Valuation Motion, which consumed several days, has concluded and this Court has taken the matter under advisement and directed the parties to submit post trial memoranda.

many other chapter 11 cases pending for an equal amount of time. A transfer of venue would have imposed on the new court the burdensome task of moving up along the "learning curve" and would have delayed the entire reorganization process. Ultimately, a delay in the reorganization process would not have worked in favor of the convenience of the parties or the interest of justice.

Clearly, this Court placed great emphasis on the "learning curve" issue when considering the "economic administration of the estate" CORCO factor. Indeed, absent the "learning curve" established in this case, this Court would have been inclined to conclude that the economic administration of the estate would be better served by a transfer of venue to Virginia. However, as explained above, the "learning curve" issue must be given much deference because it strikes at the efficient and timely reorganization of this estate. The end result is that this single consideration, the "learning curve" established in this case, works to deny a transfer of venue.

In sum, this Court finds that the interest of justice and convenience of the parties dictates that venue be maintained in this district.

The Debtor is directed an order on five (5) five days' notice in accordance with both this Court's Decision signed on October 23, 1990 and today's decision on the remanded motion.