In re STANDARD TANK CLEANING
CORP., Debtor.

Bankruptcy No. 190–14015–260.

Adv. No. 190–1365.

United States Bankruptcy Court,
E.D. New York.

Nov. 15, 1991.

Harvis, Backenroth & Trien by Abraham Backenroth, New York City, for debtor.

Cari Jackson Wild and Mark A. Wenzler, Deputy Attys. Gen., State of N.J., Div. of Law, Dept. of Law and Public Safety, Trenton, N.J., for State of N.J.

McCarter & English, by J. Chaffin Parrish, New York City, for Signal Capital Corp.

Rogers & Wells, by Vincent J. Coyle, Jr., New York City, for Creditors' Committee.

Al Dimino, Garden City, N.Y., Asst. U.S. Trustee.

## DECISION

CONRAD B. DUBERSTEIN, Chief Judge.

This matter concerns a motion made by the Debtor to vacate the order of this Court dated December 27, 1990 transferring venue of this case to the District of New Jersey pursuant to 28 U.S.C. §§ 1408, 1412 and Federal Rules of Bankruptcy Procedure[1] 1014(a). After several hearings and for the reasons stated below, the motion is denied.

---

1. Hereinafter referred to as "Fed.R.Bankr.P."

## FACTS

Standard Tank Cleaning Corp., the debtor and debtor in possession ("Standard Tank" and the "Debtor"), operates a tank cleaning and wastewater processing facility in Bayonne, New Jersey. In the course of this business, the Debtor cleans storage tanks and removes tank waste from marine vessels. Treated wastewater generated from its tank cleaning operations is discharged into the Kill Van Kull, a surface water in the State of New Jersey.

On September 16, 1988, the New Jersey Department of Environmental Protection and Energy (the "NJDEPE") ordered the Debtor to pay a penalty of $175,000.00 for discharging wastewater into the Kill Van Kull that contained pollutants in excess of permitted levels specified by its New Jersey Pollutant Discharge Elimination System and Discharge to Surface Water Permit (the "Permit"). On May 9, 1990, the State of New Jersey commenced a law suit in the Chancery Division of the New Jersey Superior Court against the Debtor to enjoin further violations of New Jersey environmental law and seeking monetary penalties. On June 19, 1990 it directed the Debtor to pay the $175,000.00 penalty. The Debtor made the payment accordingly. Presently, the Debtor's maximum liability to NJDEPE is $10 million.

Largely as a result of its problems with the State of New Jersey, the Debtor on September 19, 1990 filed in this court a petition for relief under Chapter 11 of the Bankruptcy Code. The State of New Jersey is listed as one of the Debtor's twenty largest creditors but has not yet filed a claim. On October 19, 1990, the Debtor instituted an Adversary Proceeding against NJDEPE in this Court, wherein it sought a declaratory judgment barring the filing of any claim by NJDEPE unless the $175,-000.00, paid by the Debtor to it within ninety days of the filing of the petition in bankruptcy, be returned together with interest and costs as a preferential transfer under § 547 of the Bankruptcy Code. In lieu of filing an answer to the complaint, pursuant to Fed.R.Civ.P. 12(b) [2], made applicable to bankruptcy proceedings pursuant to Fed.R.Bankr.P. 7012, NJDEPE made a motion to transfer venue in accordance with Fed.R.Bankr.P. 1014(a).

On December 27, 1990, this Court granted NJDEPE's motion, having found that the interest of justice and convenience of the parties required that the Chapter 11 case and adversary proceeding be transferred from the Eastern District of New York to the District of New Jersey. *See In re Standard Tank Cleaning Corp.*, 122 B.R. 174 (Bankr.E.D.N.Y.1990). However, upon the Debtor's request, the order was stayed pending appeal. On January 25, 1991, the Debtor filed a motion requesting that this Court vacate its order of December 27, 1990 on the grounds that the decision of this Court and its order transferring venue erroneously relied on what the debtor alleged as misrepresentations by NJDEPE. Upon review of the Debtor's motion, this Court ordered a reconsideration of its decision to transfer venue and the matter was set down for a rehearing.

## DISCUSSION

### I.

■ By virtue of Fed.R.Bankr.P. 1014(a)(2), this Court may not retain an improperly venued case and must either transfer the case where venue is properly laid or dismiss it. The statute governing the propriety of venue is 28 U.S.C. § 1408 which provides:

> Except as provided in Section 1410 of this title, a case under title 11 may be commenced in the district court for the district—
>
> (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the

---

2. Fed.R.Civ.P. 12(b) states in pertinent part:
   Every defense, in law or fact, to a claim, for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (3) improper venue.
   Fed.R.Civ.P. 12(b) (1991).

subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one hundred and eighty day period than the domicile, residence, or principal place of business in the United States, or principal assets in the United States, of such person were located in any other district; or

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

Since no prior filing by an affiliate of the Debtor has been properly made in this district, venue of this case in the Eastern District of New York must be predicated based on subsection (1) of section 1408. Subsection (1) enumerates four alternative grounds for venue: domicile, residence, principal place of business and principal assets. Domicile and residence generally apply to individuals and not to corporations. Therefore, to determine whether venue is proper in this district, the court must look at the Debtor's principal place of business and principal assets.

█ What constitutes the principal place of business of a corporation is a question of objective fact, not subjective intention. *In re Dock of the Bay, Inc.*, 24 B.R. 811, 814 (Bankr.E.D.N.Y.1982); *In re Hudson River Nav. Corp.*, 59 F.2d 971 (2d Cir.1932) (decided under former Bankruptcy Act and Rules). Therefore, "[i]t is necessary in each case to consider the character of the corporation, its purposes and its activities." *In re Suzanne De Lyon, Inc.*, 125 B.R. 863, 867 (Bankr.S.D.N.Y.1991) (citing *Dock of the Bay*, 24 B.R. at 815).

█ Essential to this determination is the location at which the Debtor makes its major business decisions. The corporation's principal place of business is "the place where general supervision is given," *In re Landmark Capital Co.*, 19 B.R. 342, 347 (Bankr.S.D.N.Y.1982), *aff'd Landmark Capital Co. v. North Central Dev. Co.*, 20 B.R. 220 (S.D.N.Y.1982), not "necessarily where the manager, or controlling stockholders or directors, happen to be located

or meet." *Dock of the Bay*, 24 B.R. at 814. Therefore, many courts have held that a corporate Debtor's principal place of business may be where the Debtor makes its major business decisions, even if its assets are located elsewhere. *See In re Pavilion Place Associates*, 88 B.R. 32, 35 (Bankr. S.D.N.Y.1988) (bankruptcy court held that debtor's principal place of business was in New York and venue there was proper in that it was established that personnel in New York office made all managerial decisions, supervised daily operation of Minnesota shopping center, and undertook financial planning for the Debtor); *In re Suzanne De Lyon, Inc.*, 125 B.R. 863 (Bankr. S.D.N.Y.1991) (venue was proper in New York where the president, and chairman, was the only employee involved in making all corporate decisions and leased an apartment in New York solely to meet with suppliers, advertisers, designers and various lending institutions to arrange financing for the Debtor's operation). Compare *Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co., Inc. (In re Commonwealth Oil Refining Co., Inc.)*, 596 F.2d 1239, 1246 (5th Cir.1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980) (corporation's principal place of business in offices where the Debtor makes its major business decisions), with *Dock of the Bay*, 24 B.R. at 815 (venue improper where Debtor had no business address or telephone number in district); *In re Maidman*, 2 B.R. 569 (Bankr. S.D.N.Y.1980), *aff'd in an unreported decision of the District Court* (Motley, D.J.), *aff'd sub nom. Compass Investment Group v. Maidman*, 668 F.2d 682 (2d Cir. 1982) (Miami Beach, Florida, where the principal assets of the debtor where located, and not New York, was where venue properly lay); *In re Bell Tower Associates, Ltd.*, 86 B.R. 795 (Bankr.S.D.N.Y.1988) (movant was unable to bear burden of proof that the Debtor did not have a presence nor paid taxes in New York).

The Debtor argues that venue is proper in the Eastern District of New York because its principal place of business for the 180 days prior to the filing of the petition was not the tank cleaning and wastewater

facility it operates in Bayonne, New Jersey, but rather the oil spill cleanup business it operates out of 2945 Richmond Terrace, Staten Island, New York. The Debtor claims it controls a fleet of tugboats and other vessels, which are docked in Staten Island, from its Richmond Terrace office there and that it is this operation and not the Bayonne facility, which generates most of its revenues. Moreover, the Debtor seeks to support its contention that its primary place of business is in Staten Island through the following facts:

(a) the Debtor's offices are located in Staten Island;

(b) the Debtor maintains substantial facilities on Staten Island for its emergency response team for the clean up of oil spills, including a substantial amount of equipment and storage booms;

(c) during the most recent fiscal periods, a substantial part, if not the dominant part, of the debtor's profit was earned by the Debtor's Staten Island-based emergency response oil spill cleanup business;

(d) the Debtor's books and records are prepared and maintained in Staten Island;

(e) the management of the activities of the Debtor's operations and directions regarding the receipts and disbursements with regard to the operations are in Staten Island;

(f) the Debtor's budgets, financial reports, operating reports, tax returns and financial forecasts, are generated from the Debtor's offices in Staten Island;

(g) the accounting of the Debtor's business occurs in Staten Island; and

(h) the marketing plans and future plans for the Debtor are determined in Staten Island.

■ In the course of the hearings, facts came to light indicating that the Debtor is neither the owner nor the operator of the Staten Island facility. NJDEPE informed this court at the hearing on December 11, 1990, and as appears from a subsequent affirmation submitted by it, the Debtor is one of thirty or forty subsidiaries of Standard Marine Services, Inc. Furthermore, Standard Marine Services, Inc. actually owns the Staten Island property, and along with General Marine Corporation, another of the Debtor's affiliate corporations, performs the oil clean up services.

NJDEPE also established that in 1987 each of the Debtor's officers and directors certified, in writing, to the State of New Jersey that Standard Tank conducts all of its business from its Bayonne, New Jersey location and that there are no other locations in any other jurisdiction where it conducts business. The Debtor is obligated to update that information annually pursuant to NJDEPE requirements. The most recent update was submitted in March of 1990, in which the Debtor continued to represent to the State of New Jersey that the totality of its operations were located in Bayonne, New Jersey. Furthermore, NJDEPE claims that if the Debtor has misrepresented the location of its principal place of business to the State of New Jersey, it is subject to license revocation pursuant to N.J.Admin.Code § 7:26–26.9.

In addition, the Debtor's tax returns were filed in New Jersey. The tax returns indicate that all of the books and records are kept at One Ingham Road in Bayonne, New Jersey. In fact, it was further established during the hearings that the Debtor's bookkeeper met with the attorney and accountant for the Official Committee of Unsecured Creditors of the Debtor at the Debtor's offices in Bayonne, New Jersey to orient them as to the Debtor's books and records. Also, the insurance contracts provided by the Debtor to the United States Trustee indicate One Ingham Road, Bayonne, New Jersey as the Debtor's business address.

The principal assets of the Debtor are located in New Jersey. The Debtor asserts that substantial assets associated with its oil spill cleanup operation are located in New York. However, as noted above, such operation is conducted by a corporate entity other than the Debtor. The equipment used by the Debtor in its Bayonne operations is much more substantial than that allegedly used in its Staten Island operation. The Debtor has office buildings in New Jersey for which it pays $7500.00 per

month rent as opposed to an alleged $500.00 per month rent for offices in New York. The Debtor also maintains treatment equipment, machinery, holding tanks, a boiler, and a number of vehicles in New Jersey. Moreover, the endorsements of the insurance policies for these vehicles indicate the Debtor's address as Bayonne, New Jersey. Accordingly, this Court can not look to the Debtor's principal assets in order to find a basis to properly lay venue in New York.

## II.

Even if venue were proper in the Eastern District of New York, the interest of justice and the convenience of the parties require that the venue of this Chapter 11 case be transferred to the District of New Jersey. *See Dock of the Bay*, 24 B.R. at 815. "A district court may transfer a case or proceeding under Title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Moreover, Fed.R.Bankr.P. 1014(a) provides that if a petition is filed, whether in a proper or improper district, on timely motion of a party in interest, the case may be transferred to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties. Therefore, "while a debtor's selection of venue is entitled to some deference, it is obviously not controlling." *In re Pinehaven Assoc.*, 132 B.R. 982, 987 (Bankr. E.D.N.Y.1991).

The burden of proof relating to the transfer of venue rests with the moving party. *In re Consolidated Pier Deliveries, Inc.*, 34 B.R. 327, 328 (Bankr. E.D.N.Y.1990); *In re Legend Industries, Inc.*, 49 B.R. 935, 938 (Bankr. E.D.N.Y.1985); *In re Thomson McKinnon*

*Securities, Inc.*, 126 B.R. 833 (Bankr. S.D.N.Y.1991). Typically, the movant is a creditor. However, in the present case, the creditor's motion was previously granted and it is now the Debtor that bears the burden of proof. It must demonstrate by a fair preponderance of the evidence that a transfer of the case from one district to another is warranted. *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1390–91 (2d Cir. 1990); *Matter of Landmark Capital Co.*, 19 B.R. 342 (Bankr.S.D.N.Y.1982).

The criteria employed in determining whether a transfer of venue based on the convenience of the parties and the interest of justice is appropriate, as set forth in *Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co. (In re Commonwealth Oil Refining Co.)*, 596 F.2d 1239, 1247 (5th Cir.1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980) (interpreting former Bankruptcy Rule 116, the predecessor of Fed. R.Bankr.P. 1014(a)), is as follows:

(1) The proximity of creditors of every kind to the Court;

(2) The proximity of the [debtor] to the Court;

(3) The proximity of the witnesses necessary to the administration of the estate;

(4) The location of the [debtor]'s assets; and

(5) The economic administration of the estate.[3]

*In re Portjeff Development Corp.*, 118 B.R. 184, 193 (Bankr.E.D.N.Y.1990); *In re Consolidated Pier Deliveries, Inc.*, 34 B.R. 327, 328 (Bankr.E.D.N.Y.1983); *In re Developers of Caguas, Inc.*, 26 B.R. 977, 980 (Bankr.E.D.N.Y.1983); *In re Dock of the*

---

**3.** The Bankruptcy Court in *Commonwealth Oil Refining* also listed a sixth criteria used to evaluate whether a transfer of venue was warranted:

  (6) The necessity for ancillary administration if [liquidation] should result.

*In re Commonwealth Oil Refining*, 596 F.2d at 1247.

  However, on appeal, the Court of Appeals for the 5th Circuit declined to confer great weight to this factor explaining that the "[a]nticipation

of the failure of the Chapter [11] proceeding is an illogical basis upon which to predicate a transfer." *Id.* at 1248 (quoting *In re Fairfield Puerto Rico, Inc.*, 333 F.Supp. 1187, 1191 (D.Del. 1971)). This Court also finds that a structuring of this Chapter 11 proceeding with the anticipation that it will fail is inconsistent with the rehabilitative purpose of Chapter 11 of the Bankruptcy Code, and should not form the basis for a transfer of venue.

*Bay, Inc.*, 24 B.R. 811, 815–16 (Bankr. E.D.N.Y.1982); *In re Suzanne De Lyon, Inc.*, 125 B.R. 863, 868 (Bankr. S.D.N.Y.1991); *In re Uslar*, 131 B.R. 22 (Bankr.E.D.Pa.1991).

Furthermore, many courts have included as a significant consideration, "a state's interest in having local controversies decided within its borders." *Portjeff Development*, 118 B.R. at 193; *In re Toxic Control Technologies, Inc.*, 84 B.R. 140, 143 (Bankr.N.D.Ind.1988); *McLemore v. Thomasson (In re Thomasson)*, 60 B.R. 629, 632 (Bankr.M.D.Tenn.1986); *In re Boca Raton Sanctuary Assoc.*, 105 B.R. 273, 275 (Bankr.E.D.Pa.1989).

### 1. Proximity of Creditors to the Court

It would be in the best interest of the creditors to have this case transferred to New Jersey. The Debtor lists 47 creditors, 55% of which are located in the State of New Jersey. Specifically, there are 26 New Jersey creditors, 8 New York creditors (17%), 6 Pennsylvania creditors (13%), and 7 creditors from other states (15%). The New Jersey creditors, excluding NJDEPE, bear the greatest portion of the total value of claims, amounting to approximately $595,446.00. In addition, NJDEPE is listed in the Debtor's Schedule of Twenty Largest Unsecured Creditors as having a disputed claim in an undetermined amount. However, NJDEPE claims that the Debtor's potential maximum liability owed to it is approximately $10 million. This would make NJDEPE, by far, the largest single creditor in this case.

The Debtor claims, in support of its argument, that the Unsecured Creditor's Committee opposes transferring venue to New Jersey. However, in its statement to this Court, the Official Committee of Unsecured Creditors unequivocally stated that "the committee cannot support the retention of venue in the Eastern District of New York.... [V]enue properly belongs in the District of New Jersey." Statement of the Official Committee of Unsecured Creditors Regarding Debtor's Application to Reconsider the Transfer of Venue, at p. 2. Furthermore, the Office of the United States

Trustee and Signal Capital Corp., which according to its submission, is a "secured creditor in the above-captioned proceeding," join the NJDEPE in requesting that venue of this case be transferred to New Jersey. Although travel to this district would not pose any significant hardship to these creditors, it would nevertheless be preferable to have this case administered in the district where a vast majority of them are located. *See Consolidated Pier Deliveries*, 34 B.R. at 328.

### 2. Proximity of the Debtor to the Court

Despite the Debtor's claim to the contrary, its principal place of business is in the District of New Jersey. Its principal assets and management offices are both located in Bayonne, New Jersey. Furthermore, the Debtor's President, Peter Frank, has testified that he is in Bayonne, New Jersey at least three days a week. Transcript of March 22, 1991, at p. 22.

This Court finds unpersuasive the Debtor's argument that the location of its attorneys in New York City is a significant factor for a determination of venue. The attorneys for the Debtor maintain that since they often make "numerous appearances for various cases, including the Debtor's related cases, on the same days in the Bankruptcy Court for the Eastern District of New York, Debtor's counsel is able to reduce the cost to the Debtor of travel time by dividing that time among various Eastern District clients." Debtor's Brief, at p. 11. However, no evidence has been offered to support the assertion that a reduction in the Debtor's expenses has been achieved by the location of its counsel, nor does this Court deem it a significant reason for maintaining venue here. The Court notes that the Debtor presently retains New Jersey counsel on many of its other matters.

### 3. Proximity of Necessary Witnesses to the Court

Venue of this case in the Eastern District of New York would not cause witnesses to incur any great hardship nor serious inconvenience. Nevertheless, inasmuch as po-

tential witnesses, particularly the officers and directors of the Debtor, its employees, and its creditors, are essentially all located in New Jersey, and the Debtor's books and records are also located there, "it simply makes more sense from the standpoint of judicial administration to deal with a New Jersey debtor and its largely New Jersey creditors in a New Jersey Forum." *Consolidated Pier Deliveries*, 34 B.R. at 329.

### 4. The Location of the Debtor's Assets

As discussed previously, this Court finds that the principal assets of the Debtor are located in the District of New Jersey. The equipment and facilities maintained by the Debtor at its Bayonne operation are extensively more substantial than that allegedly used by its Staten Island operation. Any issues which arise respecting these assets can be handled more expeditiously in New Jersey. Moreover, if a sale of any of the Debtor's assets became necessary, supervision would be easier in that district. As Judge Goetz of this Court noted in *Developers of Caguas*:

> Requiring [out of state] experts to come to Brooklyn, New York to educate a Brooklyn bankruptcy judge as to the value of [out of state] property will impose unnecessarily great expense ... and will serve neither the interest of justice, nor the convenience of the parties.

*Developers of Caguas*, 26 B.R. at 980. Therefore, consideration of the location of the Debtor's assets favors a transfer of the case to New Jersey.

### 5. The Economic and Efficient Administration of the Estate

The final factor addressed by the Fifth Circuit in *Commonwealth Oil Refining Co.* is whether a transfer of venue would foster the economic and efficient administration of the Debtor's estate. This criterion is actually a summary of the previous four factors. *Consolidated Pier Deliveries*, 34 B.R. at 329. Since the value, condition, and use of the Debtor's principal assets are critical to the administration of this case, the administration can be most economically and efficiently conducted in New Jersey. Furthermore, since the prin-

cipals of the Debtor, the majority of its creditors, its books and records, as well as most of the witnesses likely to testify are located in New Jersey, it logically follows that the economic and efficient administration of the Debtor's estate would be best served by transferring this case to the District of New Jersey. *See e.g., Consolidated Pier Deliveries*, 34 B.R. at 328.

In addition, this Court is not persuaded by the Debtor's argument that its progress on the "learning curve" is far too advanced to transfer the case to another district. In support of its argument, the Debtor relies on the Bankruptcy Court's decision in *In re Vienna Park Properties*, 128 B.R. 373 (Bankr.S.D.N.Y.1991). In *Vienna Park*, the court denied a motion to transfer venue, notwithstanding the fact that the Debtor had no property in the district, solely because by hearing issues raised in litigation, such as motions to lift the stay and to use cash collateral, it significantly progressed on its "learning curve". *Id.* at 378.

In support of its decision, the Court in *Vienna Park* relied on the case of *In re Manville Forest Products Corp.*, 896 F.2d 1384 (2d Cir.1990). The creditors requesting a transfer of venue in *Vienna Park* sought to distinguish *Manville* because the creditor in that case made its motion almost three years after the debtor filed its petition, where in *Vienna Park*, the creditors had moved to transfer venue approximately six weeks after the petition was filed. The court in *Vienna Park* found, however, that notwithstanding the issue of timeliness, the "[c]ourt's involvement commenced early in [the] case and was rather substantial at the time the Decision was rendered." *Vienna Park*, 128 B.R. at 377.

The case before this Court is distinguishable from both *Vienna Park* and *Manville*. In the present case, the involvement of this Court was not substantial at the time it entered the order to transfer venue to the District of New Jersey. By December 27, 1990, the only significant issue before this Court was NJDEPE's motion to transfer venue. The fact that this Court has ascended the "learning curve" as far as it

has, is a result of the Debtor's motion to vacate the prior order transferring venue. Accordingly, this Court's familiarity with this case as a result of the Debtor's actions would not be an appropriate factor in determining that venue belongs here.

In addition to everything else, a major lawsuit is pending in the Superior Court, Chancery Division, Hudson County, New Jersey where NJDEPE is suing the Debtor for violation of the State's environmental laws. Were this court inclined to deny the transfer motion and keep this case in the Eastern District of New York, it undoubtedly would abstain from trying the issues of that suit, lift the stay, and permit it to be tried in the New Jersey court. However, this Court is not inclined to deny the transfer motion and leaves the question of abstention to the New Jersey bankruptcy court to which this case would be assigned.

For all of the reasons hereinabove stated, the motion to vacate this Court's December 27, 1990 order transferring venue of these proceedings to the District of New Jersey is denied.

SUBMIT AN ORDER CONSISTENT WITH THIS OPINION.