In re CONDOR EXPLORATION, LLC,
a Nevada limited liability company,
EIN: 88–0438411, Debtor.

No. 03–14133–HRT.

United States Bankruptcy Court,
D. Colorado.

June 17, 2003.

Keith Miles Aurzada, Dallas, TX, for Debtor.

Barry L. Wilkie, Denver, CO, for Petitioning Creditors.

## ORDER REGARDING ALLEGED DEBTOR'S MOTION TO DISMISS OR TRANSFER VENUE

HOWARD R. TALLMAN, Bankruptcy Judge.

On March 12, 2003, an involuntary Chapter 7 petition ("Involuntary Petition") was filed against Condor Exploration, LLC ("Condor" or the "Debtor") by creditors Baker Hughes Oilfield Operations, Inc., Toolpushers Supply Company and Schlumberger Technology Corporation (collectively, the "Petitioning Creditors"). Condor filed an Answer to the Involuntary Petition and on April 10, 2003, filed a Motion to Dismiss or Transfer Venue (the "Venue Motion"). The Petitioning Creditors filed their Response in opposition to the Venue Motion on May 6, 2003. The Venue Motion was joined by Horsetrap Partners, LLC ("Horsetrap"), a Wyoming company and Condor's joint venture partner or investor that claims a 50% interest in Condor's Wyoming oil and gas leaseholds. Following a scheduling conference and a brief period for discovery by the parties, the Venue Motion came before the Court for a contested hearing on June 4, 2003.

Having considered the pleadings filed, the evidence produced at trial, and the arguments of counsel, the Court is prepared to rule. For the reasons stated herein, the Court concludes that this involuntary case should not be dismissed, but should be transferred to the United States Bankruptcy Court for the District of Wyoming for further proceedings and administration.

*Venue Analysis*

Title 28, U.S.C. § 1408 prescribes venue for cases under Title 11. Venue of a bankruptcy case is only proper in the district in which the *domicile, residence, principal place of business* in the United States, or *principal assets* in the United States, of the person or entity that is the subject of such case *have been located for the one hundred and eighty days immediately preceding such commencement* or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district.

28 U.S.C. § 1408(1) (emphasis added). Thus, with respect to a timely-filed objection to venue, the Court must determine whether, during the 180–day period prior to the commencement of this involuntary case (the "Venue Period"): (1) Colorado was the Debtor's domicile; (2) Colorado was the Debtor's residence; (3) Colorado is the Debtor's principal place of business; or (4) the Debtor's principal business assets were located in Colorado. Should the Court find any one of these four alternatives exist, venue is proper in Colorado. If Colorado venue is improper, the Court must dismiss the Involuntary Petition or transfer it to a proper venue without hearing the merits of the Involuntary Petition.

Condor and Horsetrap dispute that venue is proper in Colorado and assert that the case should be dismissed or, in the alternative, that venue should be transferred to Wyoming. Condor asserts that its headquarters had always been located in Bend, Oregon. It asserts that Bend is where the corporate, executive management lives and works and where the company's key financial and business records are located. The three of the five Condor members that live in Oregon are: Mr. Patrick Gisler, Condor's Chief Executive Officer; Mr. Philip Andersch, the Vice-President of Operations; and Mr. Stephen Trono, Vice–President and one of the company's co-founders.

The Petitioning Creditors argue that Colorado is the Debtor's principal place of business and so Colorado is a proper venue for this involuntary case. They assert that Condor's office located in Greenwood Village, Colorado, in the Denver Technological Center Office Park, south of Denver (the "DTC Office"), is the Debtor's principal place of business. They allege that this is the main office from which the company was managed and with which creditors had primary contact.

Condor counters that the DTC Office, after the company's oil and gas production activities shut down in early 2002 and especially during the Venue Period, is basically a "data room." The DTC Office is where the remaining two members of the LLC are located: Mr. Nixon Lange, the Chief Operating Officer; and Mr. Robert Kenney, the Exploration Manager. This is where Condor's geologic, seismic and geophysic data and information regarding the Wyoming properties is maintained. These records are currently used by Condor members to make presentations to potential investors, venture partners and purchasers and are available for their review and analysis.

■ Moving to the first two of the venue options, domicile and residence generally apply to individuals and not to a corporation. *In re Standard Tank Cleaning Corp.*, 133 B.R. 562, 564 (Bankr.E.D.N.Y. 1991). However, Colorado venue cannot be based on domicile since Condor was formed as a Nevada limited liability company in 1999 and is only registered to do business in Colorado. Although the Petitioning Creditors cite cases such as *In re Griffith*, 215 B.R. 893 (Bkrtcy.M.D.Ala. 1997), and *Gadlin v. Sybron International Corp.*, 222 F.3d 797 (10th Cir.2000) for the propositions that venue is proper anywhere that a corporate debtor is (1) a "resident" and regularly doing business for the purpose of service of process, or (2) is a "citizen" for purposes of diversity jurisdiction, those cases were not decided under 28 U.S.C. § 1408, and are inapplicable here. The Court finds that Condor is not domiciled in or a resident of Colorado for the purposes of determining proper venue in this case.

It is clear that the Debtor's primary business assets are located in Wyoming. The Debtor controls approximately 105,000 acres of oil and gas properties in Lincoln

and Uinta Counties located in southwestern Wyoming. Prior to shutting down operations in January, 2002, Condor had drilled five (5) wells on these properties; incurring lease payment obligations, environmental reclamation responsibilities and much of its general credit liabilities as a result of its oil and gas exploration, drilling and production operations. So, the location of Condor's primary business assets does not serve as a basis for venue in Colorado.

▪ Therefore, venue is only proper in Colorado if it is the Debtor's principal place of business. The location of the Debtor's principal place of business is a question of fact to be resolved after considering all relevant facts and circumstances. *In re Broady*, 247 B.R. 470, 473 (8th Cir. BAP 2000); *Standard Tank*, 133 B.R. at 564 (what constitutes the principal place of business of a corporation is a question of objective fact, not subjective intention). The Tenth Circuit Court of Appeals has held that the determination of a corporation's principal place of business is one of fact as to where, in the main, the corporation does its business. *In the Matter of Guarantee Acceptance Corporation v. Fidelity Mortgage Investors*, 544 F.2d 449 (10th Cir.1976) (Chapter X reorganization finding corporation's principal place of business was California, so venue over the corporation's reorganization petition was improper in federal district court in Oklahoma). This test provides the broad, general, standard which the Court believes it must apply, in this case with respect to a limited liability company. To assist in this analysis, other courts have considered a variety of factors in determining a debtor's primary place of business for purposes of proper venue.

Some cases look to the place where the debtor's major, business management decisions are made. Under that view, wherev-

er the debtor's primary decision-makers are congregated will be the principal place of business. *See, e.g. In re Peachtree Lane Associates, Ltd.*, 150 F.3d 788 (7th Cir.1998). But, the *Guarantee Acceptance* case also instructs that the corporate headquarters and offices are not necessarily the principal place of business. *Guarantee*, 544 F.2d at 452. Another line of cases looks more to the location of the debtor's day-to-day operations. This "operational test" looks to the location of the debtor's personnel, equipment and real estate as well as the place where executive and high-level management's daily decisions are made to determine where it actually does its business. *See, e.g. In re EDP Medical Computer Systems, Inc.*, 178 B.R. 57, 62 (M.D.Pa.1995).

▪ For this Court, the only difference between these two approaches is that the "operational test" is a somewhat more expansive inquiry. It takes into account where the "nerve center" of the debtor is, but also takes location of the day-to-day operations into consideration. Using the more wide-ranging inquiry, the Court looks to the following relevant factors to determine Condor's principal place of business: (1) the location of primary decision-making; (2) the location of company books, records, accounting and other management information; (3) the location of day-to-day activities; and (4) the location of personnel, equipment and assets.

▪ The Petitioning Creditors have pointed to cases, such as the Tenth Circuit's decision in *Gadlin*, 222 F.3d 797 and *Hale v. MasterSoft International Pty., Ltd.*, 93 F.Supp.2d 1108 (D.Colo.2000), for application by the Court in determining Condor's principal place of business. These cases applied a "total activity of the company" or "totality of circumstances" test, which considered the character of a corporation, its purposes, the kind of busi-

ness in which it is engaged, and the situs of its operations. *Gadlin*, 222 F.3d at 799. The Court's review shows these decisions concern diversity jurisdiction matters under 28 U.S.C. § 1332 rather than bankruptcy venue under 28 U.S.C. § 1408, and are therefore not directly on point to this Court's inquiry. In any event, the Court believes that these factors, and others, have been covered by the analysis performed here.

Title 28 U.S.C. § 1408 is clear that the relevant period of inquiry for determining a debtor's principal place of business for purposes of venue is that 180–day period immediately preceding the commencement of the case. The evidence showed that Condor's operations have changed over its short, four (4) year history, but the Court's focus must be on the Venue Period.

CEO Gisler's testimony indicated that from the time of Condor's founding in 1999 until January, 2002, the company was engaged in the exploration, drilling and production of oil and gas. When the company was producing, COO Lange and Manager Kenney were actively involved in the operations of the Wyoming properties. They participated in the ordering of services and supplies; meeting with investors, customers and creditors; and exercising certain check-writing authority as necessary for field operations. COO Lange stated that, when production shut down in early 2002, these activities stopped. As oil prices began to drop in late 2001 and by early 2002, with bills to pay and no revenue to do so, Condor's focus shifted from an operating, producing oil and gas company to one with limited operations, for saving expenses and preserving assets, and dominated by marketing efforts to find potential investors, joint venture partners, and/or purchasers for the company's assets.

During the Venue Period and presently, the Debtor appears to be somewhat of a loose association of its five (5) members. The three located in or near Bend, Oregon, attend to the overall financial and administrative matters for the company; the two located in the Denver vicinity are geologic scientists, who maintain the company's oil and gas records in what COO Lange referred to as a "data room" and who participate, along with some of the Oregon members, in presentations to potential investors and purchasers. These presentations have been conducted in Colorado as well as in several other western states, even by telephone. Each member appears to be contributing certain assets to Condor's efforts. For example, CEO Gisler testified that he pays some of the ongoing administrative expenses. COO Lange holds the DTC Office lease in his own name, and although the company is paying the rent, Lange, not Condor, would have the ultimate financial responsibility for lease payments.

Based on the evidence presented, the Court finds that Colorado is not the location of Condor's primary decision-making, Oregon is. In addition, most all decisions, whether made in Oregon or Colorado, relate to matters involving the Wyoming properties. COO Lange testified that CEO Gisler is the primary decision-maker and always has been, with he and Manager Kenney reporting to Gisler concerning their activities. It is also clear from the testimony that during the Venue Period, Condor's company books and records and its financial and management files were maintained in Oregon. The Oregon office houses the company's accounting, marketing, contract, litigation and financial records. The checks written to pay bills are cut in Oregon. The company's accounts at Colorado banks, which were once used by the DTC Office to pay some of the bills associated with the Wyoming drilling and production activities, have either been

closed or have remained inactive for some time.

As to the location of day-to-day operations, the Court finds that during the Venue Period, the Debtor's operations have been quite limited, compared to when it operated as a producing company. Some operations occur in Oregon, some in Wyoming, and some in Colorado. The Court does not find that the nature and quantity of operations in Colorado are sufficient to qualify the DTC Office as Condor's principal place of business. COO Lange stated he comes to the office once a week to collect mail and sends it to Oregon for processing. The Debtor's one employee is located in Oregon. COO Lange and Manager Kenney staff the data room as necessary to respond to investor/purchaser interest that the company's marketing efforts may generate.

As to the last factor for determining a debtor's principal place of business, the Court finds that the majority of Condor's members (three of five) and its one clerical/administrative employee work from its headquarters in Bend, Oregon. The Court has considered the fact that CEO Gisler and other members may also run other businesses from that location, but believes it does not change the outcome. Clearly, Condor's major assets are the Wyoming oil and gas properties, and the equipment that was utilized in the development of that project would be in Wyoming.

The Petitioning Creditors have presented a substantial number of documents in support of their contention that the DTC Office is Condor's principal place of business, making Colorado a proper venue. Particularly, the Petitioning Creditors argue that Condor has previously asserted or admitted, in litigation pleadings and general corporate filings and annual reports, that its principal place of business is at the DTC Office in Colorado. The Peti-

tioning Creditors point to certain Answers filed by Condor and to Stipulated Judgments, in response to litigation commenced by creditors, that admit or confess that the company's principal place of business is in Colorado. Although the Court admitted such exhibits into evidence, the Court finds that much of this information is not probative or not dispositive for the issue of venue. First, many of these exhibits involve events that occurred before the Venue Period. In addition, CEO Gisler explained to the Court's satisfaction that in several of these litigation matters, the company sought to save expenses for itself, and for the creditors seeking recovery, by simply confessing judgment, since in many cases Condor admitted the money was owed and, by fighting, would have to pay its own legal costs and probably the creditors' fees and costs eventually, as well.

The Petitioning Creditors also point to certain corporate filings as recent evidence which demonstrate that Condor has admitted that the DTC Office is its principal place of business. Again, most of the filings or reports provided cover periods prior to the Venue Period. However, even where a few such reports were filed for periods including some or all of the Venue Period, this fact does not persuade the Court to decide differently. The Court heard no explanation on whether the questions in these annual, state reports, asking for the principal office or place of business, refer to a company's office merely in the state of filing or as to the entire company. In any event, the Court does not find such facts significant in considering all of the testimony and exhibits presented.

Therefore, from its analyses of the above factors, the Court finds that Condor's principal place of business is not Colorado.

*Analysis on Whether to Dismiss or Transfer Venue*

The Court next moves to the issues of whether to dismiss or to transfer the venue of this case.

█ Pursuant to 28 U.S.C. § 1412, the Court may transfer a case under Title 11 to another district "in the interest of justice or for the convenience of the parties." The burden is on the movant, Condor in this involuntary case, to show by a preponderance of the evidence that the transfer of venue is warranted. *In re Enron*, 274 B.R. 327 (Bkrtcy.S.D.N.Y.2002).

█ Rule 1014, F.R.B.P. allows the Court, regardless if the case is properly or improperly venued in this district, to use either of the above two standards to transfer the venue of a case to another district. In addition, in an improperly venued case, Rule 1014 provides the Court with the additional option to dismiss the case, and require the parties to start again and refile in another district. Therefore, the decision to dismiss or transfer an improperly venued case is within the discretion of the bankruptcy court. *In re Blagg*, 223 B.R. 795 (10th Cir. BAP 1998). The Court finds that this case should not be dismissed, but rather the venue should be transferred to the District of Wyoming.

The Court can appreciate that the Petitioning Creditors have been frustrated in their dealings with Condor. The Court can understand how the Petitioning Creditors and others may have believed that Condor operated its principal place of business in Colorado. It appears to the Court that Condor operations may have created much confusion over this issue and that it has taken an evidentiary hearing and testimony under oath in order to obtain a clearer, broader picture of the relevant facts. Although frustration and confusion concerning Condor's operations is not rea-son to find venue proper in Colorado, the Court finds it provides an initial justification for not dismissing the case.

Confusion arises from Condor's members being located in different places. The company is an affiliation of financial and technical expertise, striving to successfully manage an investment in a Wyoming oil and gas project. When operations were going strong in Wyoming, the DTC Office and its scientists played a more active role in the company's affairs. Once production ceased, the DTC Office and its functions had to change. Expenses had to be kept at a minimum while additional investors or partners were found. In cutting back to save expenses, Condor continued to use business cards and bank account check stock with the DTC Office address on it, even though the decisions to pay the bills and payments were being made in Oregon. Confusing, yes. It makes more difficult to discern the separation between Condor's corporate and management operations, performed by members in Oregon, from the technical and data maintenance functions, performed by members at the DTC Office.

Accordingly, the Court believes that the facts and circumstances in this case, provide the grounds for not dismissing the case, but rather for transferring venue. The Debtor must bear most of the responsibility for this state of affairs and creditors should not be prejudiced to the extent that dismissal would entail.

█ The decision of whether to transfer the venue of a bankruptcy case is within the Court's discretion based on an individualized, case-by-case analysis of convenience and fairness. But, the Court also recognizes that transferring venue of a bankruptcy case is not to be taken lightly. *Enron*, 274 B.R. at 342. However, the bankruptcy court does not have discretion to retain jurisdiction over an improperly

venued case where a timely objection has been filed. *Blagg,* 223 at 803. Based on its consideration of the testimony and other evidence presented, the Court finds that Condor has met its burden under the standards of the Bankruptcy Code and Rules, and this case should be transferred to Wyoming.

■ The following factors have been considered by several Courts to analyze the convenience of the parties standard; and thus, to determine whether a change of venue is appropriate:

1. The proximity of creditors of every kind to the court;
2. The proximity of the debtor to the court;
3. The proximity of the witnesses necessary to the administration of the estate;
4. The location of the assets;
5. The economic administration of the estate;
6. The necessity for ancillary administration if bankruptcy should result.

■ In considering the "convenience of the parties" for purposes of determining whether to transfer venue, the factor given the most weight is the promotion of the economic and efficient administration of the estate. *In re Enron,* 274 B.R. at 343; *In re Willows Limited Partnership,* 87 B.R. 684, 686 (Bkrtcy.S.D.Ala.1988). (The most important consideration in determining whether the transfer of venue is appropriate is whether the transfer would promote the economic and efficient administration of the estate); *see also, Matter of Commonwealth Oil Refining Co., Inc.,* 596 F.2d 1239, 1247 (5th Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980); *Matter of Windtech,* 73 B.R. 448, 451 (Bkrtcy.D.Conn.1987).

■ Furthermore, in addition to these factors, many courts have included as a significant consideration, "a state's interest in having local controversies decided within its borders." *In re Standard Tank Cleaning Corp.,* 133 B.R. 562, 567 (Bkrtcy. E.D.N.Y.1991) (string citations omitted). The Court finds that this factor must also be given significant weight in analyzing the circumstances of this case.

■ When considering the "interests of justice" standard for purposes of determining whether to transfer the venue of a bankruptcy case, the Court applies a broad and flexible standard, considering whether the transfer of venue will promote the efficient administration of the estate, judicial economy, timeliness, and fairness. *Enron,* 274 B.R. at 349.

■ As to the proximity of the creditors, proximity of the debtor and the proximity of witnesses necessary to the administration of the estate, the Court finds that no matter where venue is selected, there will be inconvenience for the debtor, creditors and witnesses. Four states were in the running for which venue was a distinct possibility: Oregon, Colorado, Nevada and Wyoming. If Oregon were the venue, three of Debtor's members and the company's books and records, accounting and management files would be near the court. The Debtor's two members with the technical, geological knowledge, the creditors and potential witnesses for one or both sides would need to travel. If Colorado was selected, then the Debtor's technical people and the Petitioning Creditors would be close to Court. The Debtor's senior, corporate management and creditors outside of Colorado would have to travel. Venue in Nevada would require all of the Debtor's members and most of the creditors' representatives to travel there. Finally, venue in Wyoming will require the Debtor's members and certain creditor representatives to travel as well.

379

However, the Court believes that the other factors concerning the "convenience of the parties", such as the location of assets, the economic administration of the estate, and the strong local interest aspects of this case, dictate that venue is proper and best in Wyoming. These factors also indicate that it would be in the "interests of justice" for venue to be transferred to Wyoming.

The evidence suggests that only a small percentage of the Debtor's creditors are located in Colorado. By the Court's count, from the exhibits admitted and used by the parties in argument, of the approximately sixty plus creditors listed by Condor: 33 have Wyoming addresses; 16, Texas; 6, Colorado; and, the remaining dozen are spread out over five or six other states. The Court is aware from experience that certain of the Debtor's larger creditors/suppliers with offices elsewhere, also have offices in Colorado. This is a reality of modern commerce and does not demand that venue for this case must be in Colorado. Such creditors have the resources to respond accordingly to adequately protect their interests against the Debtor.

All of the approximately 105,000 acres of oil and gas leases that the Debtor controls are located in southwestern Wyoming. Wherever most of the Debtor's creditors may be located, most contracted with the Debtor and provided services or supplies, whether dealing with the Debtor's members in Oregon or Colorado, knowing that those services rendered or supplies provided were largely intended to benefit the Wyoming properties. It follows that creditors should not be surprised or disadvantaged by having to participate in the bankruptcy process in Wyoming.

There are other aspects of the Debtor's operations and business organization that favor Wyoming as to venue, particularly the important local interest of creditors

and parties in the Debtor's affairs. The testimony revealed that all of the Debtor's lessors for its oil and gas properties are located in Wyoming. The Debtor pays delay rentals to these entities to retain control of its leasehold oil and gas interests. In addition, the oil and gas industry is a highly regulated one, involving serious geological, environmental and reclamation issues of most importance to the state of Wyoming and the local counties and communities where operations have taken place. These regulatory agencies, local governmental units and general-creditor suppliers must play a crucial role in any bankruptcy case. The Debtor should be able to better coordinate its Wyoming administrative and regulatory matters with a pending bankruptcy case if both are in Wyoming. Yes, Colorado may house a data room, depicting the geologic and technical characteristics of the Debtor's Wyoming assets, which creditors and potential investors may come to examine; but, Wyoming is the physical location of Condor's primary assets which demand the most local involvement and/or control.

The Debtor's relationship with Horsetrap and Casino Credit Corporation ("Casino") also provides reason why this case should not be dismissed, and favors transferring venue to Wyoming. The testimony revealed that the Debtor's five members are also partners of Horsetrap. In addition, the Debtor's primary lender, Casino is a Nevada company from which the Debtor borrowed approximately $2.6 million in exchange for a security interest or lien on all of Debtor's Wyoming assets. However, CEO Gisler also testified that he is the 100% shareholder of Casino, an entity which he called a "lender of last resort". The Court is not aware that such relationships have prejudiced other creditors and does not intend to suggest this is the case. However, such evidence of overlapping

management, personnel or owners among these three entities has persuaded the Court that a number of complex legal issues and/or disputes may arise with other creditors, and should they come to pass, they must be decided under Wyoming law. It would be unfair to the Petitioning Creditors and other parties-in-interest, for the Court to merely dismiss this case and require creditors to start over under such circumstances. Even if the current high case volume and very full hearing schedules experienced by the Colorado bankruptcy court did not exist, this Court would not presume to be as competent to decide these Wyoming state and local law issues as the Wyoming bankruptcy court.

Finally, as to the economic administration of the estate, the Court finds that this factor also favors venue in Wyoming. This is presently an involuntary Chapter 7 case. With the transfer of venue to the bankruptcy court in Wyoming, it will be for that court to decide whether Condor should be adjudicated a Chapter 7 debtor. Were this Court to allow venue in Colorado and ultimately to decide that the Debtor's case should proceed under Chapter 7, the United States Trustee would immediately face certain problematic administrative decisions in appointing a trustee for the case. If a Colorado panel trustee were selected, because of his or her proximity and convenience to the Colorado bankruptcy court, that trustee is likely to need both Colorado counsel, to handle hearings in Denver, and Wyoming counsel, to advise the trustee on the many Wyoming law issues that are bound to arise due to the Debtor's financial structure, operating history, and leasehold assets. If a Wyoming trustee were selected to administer a Colorado case, that trustee would require counsel in at least two states, as well. In this Court's view, with the case administration in Wyoming, the need for substantial involvement by Colorado counsel should be eliminated.

Therefore, after review of all of the required factors, and in light of the evidence presented at trial, the Court

ORDERS that this Involuntary Chapter 7 case is hereby transferred to the United States Bankruptcy Court for the District of Wyoming.

FURTHER ORDERS that the Clerk of the Court shall forthwith serve a copy of this Order upon the Debtor, Debtor's counsel, counsel for the Petitioning Creditors, the United States Trustee (at both his Denver Regional Office and his Wyoming District Office in Cheyenne), and the U.S. Bankruptcy Court for the District of Wyoming, at its location in Cheyenne, Wyoming.